23

United States District Court
Southern District of Texas
FILED

OCT 0 2 2000

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DAN MORIN | { | |
| | { | CIVIL ACTION NO. B-00-104 |
| V. | { | |
| | { | **(ORAL HEARING IS REQUESTED)** |
| CITY OF HARLINGEN, ET AL. | { | |
| | | |
| DONALD MORIN, ET AL. | { | |
| | { | CIVIL ACTION NO. B-00-104 |
| V. | { | |
| | { | **(ORAL HEARING IS REQUESTED)** |
| CITY OF HARLINGEN, ET AL. | { | |

DEFENDANTS' MOTION TO DISMISS
(1) DONALD MORIN, ET AL.'S FIRST AMENDED COMPLAINT, AND
(2) DAN MORIN'S SECOND AMENDED COMPLAINT
UNDER FRCP 12(b)(6) FOR FAILURE TO STATE A CLAIM

TOM LOCKHART
Federal ID No. 2257
Texas State Bar No. 12473500
ROGER W. HUGHES
Federal ID No. 5950
Texas State Bar No. 10229500
P. O. Drawer 1429
Harlingen, TX 78551-1429
956/428-7495; FAX: 956/428-2954

Attorney-in-Charge for Defendants,
CITY OF HARLINGEN, R. D. MOORE,
JOSEPH VASQUEZ and JIM
SCHEOPNER

WALTER PASSMORE
Federal ID No. 2264
Texas State Bar No. 15560400
PASSMORE, WALKER &
TWENHAFEL, LLP
2424 North 10th St., Suite 201; 78501
P. O. Drawer 3766
McAllen, TX 78502-3766
956/687-6225; Fax: 956/686-1276

Attorney for Defendants, R.D. MOORE,
JIM SCHEOPNER, In Their Individual
Capacity

23

United States District Court
Southern District of Texas
FILED

OCT 0 2 2000

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DAN MORIN | { | |
| | { | CIVIL ACTION NO. B-00-104 |
| V. | { | |
| | { | **(ORAL HEARING IS REQUESTED)** |
| CITY OF HARLINGEN, ET AL. | { | |
| | | |
| DONALD MORIN, ET AL. | { | |
| | { | CIVIL ACTION NO. B-00-104 |
| V. | { | |
| | { | **(ORAL HEARING IS REQUESTED)** |
| CITY OF HARLINGEN, ET AL. | { | |

DEFENDANTS' MOTION TO DISMISS
(1) DONALD MORIN, ET AL.'S FIRST AMENDED COMPLAINT, AND
(2) DAN MORIN'S SECOND AMENDED COMPLAINT
UNDER FRCP 12(b)(6) FOR FAILURE TO STATE A CLAIM

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Defendants CITY OF HARLINGEN, TEXAS, R.D. MOORE,

JOSEPH VASQUEZ and JIM SCHEOPNER, and file this their **DEFENDANTS'**

**MOTION TO DISMISS (1) DONALD MORIN, ET AL.'S FIRST AMENDED**

**COMPLAINT, AND**

**(2) DAN MORIN'S SECOND AMENDED COMPLAINT UNDER FRCP 12(b)(6)**

**FOR FAILURE TO STATE A CLAIM** and would show the Court as follows:

I. Statement of Nature and Stage of the Proceedings

Dan Morin sues for the death of his mother (Margarita Flores) and his own

injuries under the (1) Texas Tort Claims Act (Tex. Civ. Prac. & Rem. Code, Chap. 101)

1

and (2) 42 USC § 1983. Don Morin, et al., sue for the wrongful death of Margarita Flores and Delia Morin under the (3) Texas Tort Claims Act (Tex. Civ. Prac. & Rem. Code, Chap. 101) and (4) 42 USC § 1983.

Defendants Harlingen, Scheopner, Moore and Vasquez move to dismiss all claims under Fed.R.Civ.P. 12(b)(6) for failure to state a claim.

## II. Statement of the Issues

1      Whether the Amended Complaints allege facts showing that Defendants "seized" the Morins for 4th Amendment purposes.

2      Whether the Amended Complaints plead any exception to the holding in *DeShaney v. Winnebago County Dept. of Soc. Serv.*, 489 U.S. 189 (1989), that the 14th Amendment's Due Process Clause does not impose a duty on public officials to prevent a third party from injuring Plaintiff.

3      Whether an exception exists to *DeShaney* for a risk of harm of criminal violence by a private citizen allegedly created by the Defendants if (1) they did not create a risk of criminal violence that did not otherwise exist; (2) they did not force the Morins to encounter the danger; and (3) they did not remove the Morins' ability to protect themselves or escape the risk.

4      Whether Defendants had a duty under state law to safeguard a rifle to prevent a third party from taking it and using to commit a crime.

5.      Whether there is a duty under state law requiring Defendants to warn or protect the Morins.

2

III     Background

    A.     Allegations in Dan Morin's Second Amended Complaint

Dan Morin alleges that in 1994 a member of the public gave an AK-47 rifle to the Harlingen Police department for the sole purpose of destroying it.  2nd Am. Complaint, ¶ 10.  He alleges in September, 1997, Defendant Vasquez took possession of it and entrusted it to Defendant Moore.  2nd Am. Complaint, ¶ 10.  He alleges that both were aware that it would "come in to the possession" of Ernest Moore, Defendant Moore's son. 2nd Am. Complaint, ¶ 10. He alleges both were not trained and not properly qualified to use an AK-47 rifle.  2nd Am. Complaint, ¶ 11.

Dan Morin alleges that Defendant Moore stored the rifle in a rifle safe at his residence in the bedroom of his son, Ernest.  2nd Am. Complaint, ¶ 13.  Morin alleges that Defendants Vasquez and Moore knew that Ernest had access to the safe.  2nd Am. Complaint, ¶ 15.  Morin alleges Ernest Moore was psychologically unstable, a cocaine user and using prescription drugs.  2nd Am. Complaint, ¶ 14.

Dan Morin alleges that on or about July 7, 1999, Ernest Moore "removed" the AK-47 from the rifle safe, went to the Morin household in Rio Hondo, apparently upset over Dan Morin's relationship with Ernest's former girlfriend.  2nd Am. Complaint, ¶ 16. Moore shot Dan Morin, and killed Margarita Flores (Morin's mother) and Delia Morin (Morin's sister).  Dan Morin allege that this conduct violated the 4th and 14th Amendments, U.S. Constitution.  2nd Am. Complaint, ¶ 1.

    B.     Allegations in Don Morin's First Amended Complaint

3

Don Morin alleges that prior to 1998, a citizen gave the Harlingen police department an AK-47 rifle on condition it be destroyed.   1st Am. Complaint, ¶ 17. Defendant Vasquez did not document receipt of the weapon; he "transferred" it to Defendant R.D. Moore.  1st Am.  Complaint, ¶ 17.  Plaintiffs allege that Defendant Scheopner allowed Defendant Moore to keep the AK-47 and to store it at home as a "service weapon."  1st Am. Complaint, ¶ 17.

Don Morin alleges that Defendant Moore was not trained on or proficient in the use of an AK-47 rifle.  1st Am. Complaint, ¶ 17.  He alleges that, because Defendant Moore kept the rifle at home in a gun safe in the bedroom of his son (Ernest Moore), his son had access to it.  1st Am. Complaint, ¶ 17, 20(7), 25(5).  He allege that Ernest Moore was unstable, a cocaine user, and under medication.  Complaint, ¶ 20 (7).

Don Morin alleges that on July 7, 1998, Ernest Moore went to Margarita Flores' house to search for his ex-girlfriend, Ms. Julie Cox.  1st Am. Complaint, ¶ 17.  As he was forcibly removing her from the house, a confrontation occurred during which Ernest Moore shot to death Margarita Flores and Delia Morin, using the AK-47 rifle.  1st Am. Complaint, ¶ 17. He alleges that Ernest removed the rifle from the safe.   1st Am. Complaint, ¶ 17.

Don Morin alleges that this conduct violated the 4th and 14th Amendments, U.S. Constitution.  1st Am. Complaint, ¶ 15.

IV.  Complaint Fails to State Claims Under 4th and 14th Amendments

A.    Standard of Review

4

Under Rule 12(b)(6), the court must accept the allegations as true and must view them in the light most favorable to plaintiffs, drawing all reasonable inferences in favor of the pleader. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Dismissal under Rule 12(b)(6) is correct when it appears that no relief can be granted under any set of facts that could be proven consistent with the allegations. *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 529 (5th Cir. 1996). However, the Complaint must state facts, not conclusions, to survive a Rule 12(b)(6) challenge. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).

### B.   No Fourth Amendment Claim Absent A "Seizure" by Government Officers

42 USC § 1983 is not itself a source of substantive rights. *Graham v. Connor*, 490 U.S. 396, 393 (1989). The first inquiry is to isolate the precise provision of the federal Constitution that is allegedly infringed. *Graham*, 490 U.S. at 394.

The 4th Amendment applies when the alleged use of excessive force arises from a search or seizure of the person. *Graham*, 490 U.S. at 394; *County of Sacramento v. Lewis*, 523 U.S. 833, 844-45 (1998). A "seizure" occurs only when government agents deliberately cause the termination of an individual's freedom through means intentionally applied to that individual. *Lewis, Id.* at 115; *Brower v. Inyo*, 489 U.S. 593, 596-597 (1989). If the Complaint does not show a "seizure" under the 4th Amendment, then an "excessive force" claim can be sustained only under a 14th Amendment "Substantive Due Process" analysis. *Lewis*, 118 S.Ct. at 1715-1716; *Petta v. Rivera*, 143 F.3d 895, 910-911 (5th Cir. 1998).

5

In *Lewis*, the Supreme Court made it clear that a 4th Amendment "seizure" occurred only when the government caused an intended termination of freedom of movement through means intentionally applied to that individual. 118 S.Ct. at 1715 (instigating chase of motorcycle on which plaintiff was a passenger was not a 4th Amendment "seizure"). Consequently, unintended injuries to bystanders or hostages during an arrest are not a "seizure" under the 4th Amendment. *Lewis*, 118 S.Ct. at 1715; *Landol-Rivera v. Cruz*, 906 F.2d 791, 795-96 (1st Cir. 1990) (police officer who inadvertently shot hostages while aiming to hit the kidnapper did not "seize" hostage for 4th Amendment purposes); *Schaefer v. Goch*, 153 F.3d 793, 796 (7th Cir. 1998) (accidental shooting of the wife held hostage by her husband was not a "seizure" under 4th Amendment, even though police officers had surrounded their house and instructed the wife to "get down"). Likewise, there is no 4th Amendment claim when the force is not directed deliberately at the plaintiff. *Petta*, 143 F.3d at 901; *Medeiros v. O'Connell*, 150 F.3d 164, 168 (2nd Cir. 1998); *Sanchez v. Figueroa*, 996 F.Supp. 143, 1476 (D.C.Puerto Rico 1998).

Here, the Moring have no 4th Amendment claim against Defendants, because the Complaint does not allege Defendants "seized" Dan Morin, Margarita Flores or Delia Morin. Unintended injuries to bystanders do not constitute a "seizure" under the 4th Amendment. *Lewis*, 118 S.Ct. at 1715. There is no "seizure" when the defendant does not deliberately direct any force at the plaintiff. *Petta*, 143 F.3d at 901; *Medeiros*, 150 F.3d at 168.

6

C.   Supreme Court and Fifth Circuit Have Not
     Extended Due Process to Require Defendants
     Prevent Harm By A Private Citizen

The Amended Complaints apparently relies upon the "state created danger"

exception. Neither the U.S. Supreme Court nor the Fifth Circuit has recognized this as

a valid exception to *DeShaney*; the Supreme Court has strongly indicated it will not

recognize the exception. Even if the exception became law later, Morin's claim does not

fit within it.

In *DeShaney*, the Supreme Court plainly stated that the 14th Amendment's Due

Process Clause was triggered only by affirmative government action and put no duty on

government officials to act to prevent a third party from harming the claimant. 489 U.S.

at 196-197, 109 S.Ct. at 1004. The court neither approved nor disapproved of a rule

imposing liability if the State created the risk of harm to which it forced the claimant to

suffer, i.e., an exception for "stated-created" danger. *Id.*

Though often asked to do so, the Fifth Circuit has consistently declined to adopt

the "state-created danger" rule. *Randolph v. Cervantes*, 130 F.3d 727, 731 (5th Cir.

1997), *cert. denied,* 525 U.S. 822 (1998); *Doe v. Hillsboro ISD*, 113 F.3d 1412, 1415 (5th

Cir. 1997) (en banc); *Johnson v. Dallas ISD*, 38 F.3d 198, 201 (5th Cir. 1994), *cert.

denied*, 514 U.S. 1017 (1995). The Fifth Circuit has cast doubt on whether it is a viable

exception to *DeShaney*. *Lefall v. Dallas ISD*, 28 F.3d 521, 530 (5th Cir. 1994). The

Supreme Court stated that the rationale for any exception is that the state exercises its

authority to restrain the individual's liberty so as to render him unable to protect himself.

7

*DeShaney*, 489 U.S. at 200.  In *Johnson*, the Court questioned whether it could ever meet

the "demanding standard for constitutional liability."  38 F.3d at 201.

>   D.    Amended Complaint Fails to State Facts Showing Defendants
>         Put Morin Family In A Dangerous Environment
>         and Stripped Them of the Ability to Defend Themselves

Though the Fifth Circuit has declined to adopt the "state-created danger" rule, it has

described its elements as:

1.   The government officials must create the dangerous situation;

2.   They must know the situation is dangerous;

3.   The danger must create an opportunity for a third party to commit a
     crime which would not otherwise exist; and

4.   They must affirmatively place the plaintiff in a position of danger in
     such a way as to strip the plaintiff of his ability for self defense.

*Randolph*, 130 F.3d at 731; *Johnson*, 38 F.3d at 201.  The officials' actions must place

the plaintiff at a specific risk, as opposed to a risk that affects only the public generally.

*Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1997); *Mark v. Borough*

*of Hatboro*, 51 F.3d 1137, 1153 (3rd Cir. 1995), *cert denied*, 516 U.S. 858 (1995).  The

official must have actual knowledge that the risk of harm exists.  *Doe*, 113 F.3d at 1415.

>   1.    Defendants Did Not Create A Risk Of
>         Third Party Crime That Did Not Already Exist

Here, the alleged risk of harm was that Ernest Moore would obtain a rifle and shoot

the Morins during a jealous rage.  The pleadings must show Defendants had created the

opportunity for Ernest's crimes that otherwise would not have existed.  *Randolph*, 130

F.3d at 731; *Johnson*, 38 F.3d at 201; *S.S. v. McMullen*, ___ F.3d ___, 2000 WL

1335549, * 2 (8th Cir. 2000)(en banc).  The Morins must plead facts showing that

8

CISPDF - www.fenlei.com

Defendants actually knew they had created an extreme risk that Ernest would take the rifle and shoot the rival for his girlfriend and shoot innocent bystanders. *Johnson*, 38 F.3d at 201-2; *Lefall*, 28 F.3d at 531. They must plead facts showing the risk created was greater than the risk if they had not allegedly entrusted any rifle to R.D. Moore. *S. S., Id.* at *2.

First, the Complaint alleges nothing to show that Defendants incited Ernest Moore to take the AK-47 or to shoot the Morins. The 8th Circuit recently highlighted the importance of determining whether any risk created was greater than if the state had done nothing. *S.S.,* 2000 WL 1335549, *2. There, the state family services agency removed a child from the home because of the father had permitted a pedophile to sexually abuse her; two years later the agency returned the girl to her father's care. The father permitted the pedophile to live in the house and the pedophile then raped the girl, causing her substantial injury. The 8th Circuit (en banc) upheld a Rule 12(b)(6) dismissal. *Id.* at *2. Acknowledging that the state took some action, the Court held this was not enough; the state's action did not create a risk any greater than if it had never removed the child from her father's care. *Id.*

The Morins' pleadings state no facts showing that, unless Ernest Moore took that particular rifle, he would not have shot Dan Morin, Delia Morin or Margarita Flores. Not transferring possession of the AK-47 to Det. Moore may have prevented Ernest from having that specific rifle, but the pleadings do not allege he did not have access to any other rifle. This is not the same thing as creating an opportunity to commit those crimes which Ernest would not have had otherwise. Failing to prevent a crime is not the same

9

CMcPDF - www.fexto.com

thing as causing it. *Estate of Brown v. Barian*, 43 F.Supp.2d 1008, 1019 (E.D.Wisc. 1999).

Second, any alleged knowledge that Ernest Moore might be dangerous or likely to harm people does not create the risk of harm. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 700 (9th Cir. 1990); *Losinski v. City of Trempealeau*, 946 F.2d 544, 551 (7th Cir. 1991).

2.      Defendants Did Not Force the Morins Into Harm's Way
Or Strip Them of the Means of Self-Defense or Escape

Morin alleges nothing that would prove that Defendants (1) forced Morins to confront Ernest Moore, or (2) took from them any means of self-defense or escape. They claim Ernest went to the Morins' in a jealous fit that Dan Morin was dating his former girlfriend. Defendants did not send Ernest in their direction, nor did they cause the Morins-to be present where Ernest could confront them.

Morin alleges nothing to suggest that Defendants did anything to impair self-defense or escape from Ernest. He does not even allege the Defendants knew or even suspected Ernest was going to confront Morin or shoot his family. If Defendants did not know the Morins were in danger, they could not warn them, much less block the Morins' escape or prevent others from helping them.

3.      Defendants Did Not Know Of Any
Immediate Danger Facing A Known Victim

The "state created danger" doctrine will not apply where the government actor is not aware of any immediate danger facing a known victim. *Saenz v. Heldenfels Bros.*,

*Inc.*, 183 F.3d 389 at 392 ((5th Cir. 1999). There, the Fifth Circuit clearly stated that the "state created danger" theory is inapposite without a known victim. *Id.* at 392.

In *Saenz*, the Fifth Circuit upheld summary judgment in favor of two sheriff's deputies who declined to arrest an obviously drunk driver. 183 F.3d at 390. About 15 minutes after the deputies declined to arrest him, the drunk driver had an accident causing two fatalities. *Id.* The Fifth Circuit affirmed, holding there was no Due Process violation for increasing the risk of harm to unidentifiable members of the public. *Id.* at 391.

The Amended Complaints state facts no different that the police in *Saenz* who left a drunk to drive on down the road. The Morins allege that Defendant Moore knew or highly suspected that Ernest planned to travel to Rio Hondo with the rifle to commit violent acts. There is no allegations Defendant Moore  knew the Morins were the intended victims or that the Morins would be at home that night. The description of the events at the Morin residence reflect an unpremeditated crime of passion.

4.    Alleged Failure to Safeguard Rifle is Not Conscience Shocking

To allege on a Substantive Due Process claim, the Morins must state facts showing that the state's conduct must be conscience shocking. *Daniel v. Williams,* 474 U.S. 327, 332 (1986); *Lewis,* 523 U.S. at 850. This requires deliberate indifference, which is more than ordinary or even gross negligence. *Id.* at 848. Legal conclusions like "fraud," "malice", or "reckless" are insufficient to state a Substantive Due Process Claim. *Id.* at 854. Instead the facts alleged must show a level of abuse of power that is so brutal or offensive that it does not comport with notions of fair play and decency. *Id.* at 846, 847;

11

*S.S.*, 2000 WL 1335549 at *3.  The focus is on the state's acts, not the criminal's acts or his crime.  *S.S.,* at *3.

In *S.S.,* state protectice services removed a three year old girl from her father's custody based on suspected sexual abuse by an unknown person, as well as gross neglect by the father.  *Id.* at *4.  Two years later, in response to the father's continued efforts to regain custody, the agency returned her to her father.  During those two years, the case workers learned that the father was close friends with Griffis, a convicted child molester; Griffis visited the girl with her father in foster care; a psychologist warned the case workers that the father was "dangerously sympathetic" to a known child sexual offender and that reunification could put the child at risk.  *Id.* at *4-5.  With three months of the girl's return to her father, Griffis sexually abused her, putting her in the hospital for a week.  *Id.* at *5.

The 8th Circuit upheld a Rule 12(b)(6) dismissal on the grounds that responding to the father's request for custody was not conscience shocking.  *Id.* at *3.  In doing so, the 8th Circuit re-emphasized that the court must focus on the egregiousness of the state's acts, not the criminal's acts or the resulting injuries.

> 'We are mindful that the acts that S.S. claims were perpetrated against her once she was returned to her father were utterly indecent and egregious; and we do not doubt that those acts themselves would shock the conscience. The certainly shock ours. But we focus here, not on those acts, but on the state's acts that S.S. says led to her injuries.  We do not see how we could well hold those acts actionable without violating the Supreme Court's caveat against making 'of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States.' [citations omitted]"

*Id.* at 3.

12

The heart of the Morins' complaints is that Defendants failed to adequately safeguard city property from being taken by an unauthorized user to commit a crime. They claim only that following regulations, better training or better security would have resulted in Ernest Moore having no access to the AK-47 when he left in a jealous rage. Even if the alleged acts of poor weapons control may to negligence, those alleged acts do not rise to the level of brutality or an abuse of official power.   State and federal law enforcement officials at all levels are issued dangerous weapons.  Public officials at many level are given charge of instrumentalities which, in private hands, could be used to cause great injury, e.g. toxic chemicals under review, infectious diseases being studied.  If the state is liable because it failed to take adequate precautions to prevent a third party from taking public property to commit crimes, Substantive Due Process becomes the means by which public officials become insurers for criminal violence.

## V.  State Law Claims

Stripped to their essentials, the Morins allege two state tort theories.  The first theory focuses on allowing Ernest Moore access to the rifle.   Whether phrased as entrustment, failure to train, improper storage, etc., it all comes down to a failure to safeguard the rifle from being taken by Ernest Moore.  The second theory focuses on a duty to proptect the Morin by either warning them of a possible crime or by providing police protection.  Don Morin also alleges that Defendants were negligence in failing to destroy the AK-47 rifle as the former owner allegedly requested.

### 1.    Negligent Entrustment

The Morins allege negligent entrustment in a conclusory manner.  However, neither Amended Complaint alleges Defendant Moore either gave the rifle to Ernest Moore or told Ernest he had permission to use it.  The only facts alleged in Dan Morin's 2nd Amended Complaint, para.19 and 21, are that he stored the AK-47 rifle where his son had access to it.  The only facts alleged in Don Morin's 1st Amended Complaint, para. 23(4) and 25(5), are that he improperly stored the rifle where his son access to it.  For Rule 12(b)(6) purposes, it is the *facts* alleged that count, not the legal conclusions.  *Guidry v. Bank of La Place*, 954 F.2d 278, 281 (5th Cir. 1992).  The only *facts* alleged are that Defendant Moore stored the rifle in the gun safe in his son's bedroom, which allowed his son access to it.

Texas cases have held that negligent entrustment of a firearm to an incompetent user may be actionable.  *Kennedy v. Baird*, 682 S.W.2d 377, 388 (Tex. App.- El Paso 1984, no writ).  However, *Kennedy* does not state that there can be liability for failing to prevent the weapon from being taken without permission.  The negligent entrustment doctrine does not impose liability for failing to prevent the instrument from being taken without permission.  By analogy, Texas does not impose a duty to safeguard car keys to prevent a thief from stealing a car and injuring third parties while driving the stolen vehicle.  *See discussion, Story Services, Inc. v. Ramirez*, 863 S.W.2d 491, 497-98 (Tex.App.-El Paso 1993, writ denied).  The same rationale should apply to rifles.  Otherwise, every rifle owner in Texas is exposed to potential liability to victims of violent crimes perpetrated by a gun thief.

2.  <u>Failure to Protect</u>

14

The Morins then claims that Defendants had a common law duty to protect the Morins because Defendant Moore allegedly knew or suspected Ernest Moore might harm them. First, the Complaint make no claim that Defendants Scheopner or Vasquez had any such knowledge. Therefore, this theory cannot apply to them.

Second, under Texas law, a peace officer has no liability to a crime victim for failing to take action to prevent the commission of that crime. *Munoz v. Cameron County*, 725 S.W.2d 319, 322 (Tex.App.-Corpus Christi 1986, no writ); *Crider v. U.S.*, 885 F.2d 294, 297 (5th Cir. 1989), *cert. denied*, 495 U.S. 956 (1990). Defendant Moore had no common law duty to warn the Morins. *San Benito Bank & Trust Co. v. Landair Travel, Inc.*, ___ S.W.3d ___, 2000 WL 1205961, *6 (Tex. App.-Corpus Christi 2000, m. reh. filed).

### 3.   Failure to Destroy the Rifle

Defendants had no duty under state tort law to destroy the rifle, even if the former owner requested it. First, the former owner had no power under state law to dictate to the City what to do with the rifle one the owner allegedly gave it to the City. There was no binding contract; even if one existed, the Morins are not third party beneficiaries of it.

Second, receiving the rifle on condition of disposal creates no tort duty. Whether a duty to use ordinary care exists under any set of facts is a question of law. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). The Court must weigh the nature of the risk, the foreseeability of the risk, and probability of injury against the defendant's conduct, the burden upon the defendant to guard against said injury, and

the magnitude of such a burden. *Golden Spread Council, Inc. v. Akins,* 926 S.W.2d 287, 289-90 (Tex. 1996). The foreseeability of harm is not alone sufficient to create a duty to exercise ordinary care. *Id.* at 290-91; *SmithKline Beecham Corp. v. Doe,* 903 S.W.2d 347, 353 (Tex. 1995). Generally, a person has no duty to protect another from the criminal acts of a third party or otherwise control a third party to prevent harm. *Walker v. Harris,* 924 S.W.2d 375, 377 (Tex. 1996).

Here, Don Morin alleges that years before this incident a private citizen gave the rifle to the police to have it destroyed, which they did not do. If the former owner's desires alone were enough to create a duty, then so would a public outcry or the observation of any interested person. This simply recasts the first theory, that must prevent third parties from taking dangerous instruments in its possession or it is liable for what it does with them. This is all the more tenuous here, because there is no possibility to foretell that Ernest Moore would take the rifle years later.

Dan Morin's theory would impose a duty to destroy any dangerous weapon a state or federal agency receives, because it is possible that someone someday may take it to commit a crime. This would impose a significant burden to melt down weapons, without a corresponding significant reduction of an identifiable probable risk. If the police had refused to accept the rifle on the condition imposed, there is no guarantee a criminal would not have taken the rifle from the citizen.

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Defendants CITY OF HARLINGEN, TEXAS, R.D. MOORE, JOSEPH VASQUEZ, and JIM SCHEOPNER pray the above and

foregoing be taken under submission and upon hearing same, the Court grant the relief requested, dismiss the Complaint, dismiss all or part of the claims alleged, or grant any other such further relief to which they may show themselves entitled.

Respectfully submitted,

By: _____
TOM LOCKHART
Federal ID No. 2257
State Bar No. 12473500
ROGER W. HUGHES
Federal ID No. 5950
State Bar No. 10229500
P. O. Drawer 1429
Harlingen, TX 78551-1429
956/428-7495; FAX: 956/428-2954
Attorney-in-Charge for Defendants,

CITY OF HARLINGEN, R.D. MOORE, JOSEPH VASQUEZ and JIM SCHEOPNER

WALTER PASSMORE
Federal ID No. 2264
Texas State Bar No. 15560400
PASSMORE, WALKER & TWENHAFEL, LLP
2424 North 10th St., Suite 201; 78501
P. O. Drawer 3766
McAllen, TX 78502-3766
956/687-6225; Fax: 956/686-1276

Attorney for Defendants, R.D. MOORE and JIM SCHEOPNER, In Their Individual Capacity

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing document was forwarded on this ____ day of October, 2000, to the following counsel of record and interested parties:

Attorney of record for Plaintiff, DAN MORIN, et al:

> Mr. Robert J. Patterson          CMRRR No. 7000 1670 0000 0785 3608
> PATTERSON & ASSOCIATES
> 101 N. Shoreline, Ste. 201
> Corpus Christi, TX 78401

Attorney of record for Plaintiff, DONALD MORIN, et al:

> Mr. Jerry J. Trevino             CM RRR 7000 1670 0000 0785 3592
> Attorney at Law
> 1125 South Port Avenue
> Corpus Christi, TX 78405

Attorney of record for Defendants MOORE and SCHEOPNER, individually

> Mr. Walter Passmore                          Regular Mail
> PASSMORE, WALKER & TWENHAFEL, L.L.P.
> P. O. Drawer 3766
> McAllen, TX 78502-3766

ROGER W. HUGHES