29

United States District Court
Southern District of Texas
FILED

MAR 2 4 2003

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JOSE G. ALEJANDRO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. |
| VS. | § | B-03-018 |
| | § | |
| JO ANNE B BARNHART, | § | |
| COMMISSIONER OF THE | § | |
| SOCIAL SECURITY | § | |
| ADMINISTRATION | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFFS'S MOTION FOR SUMMARY JUDGMENT

Plaintiff moves the Court under Rule 56, Federal Rules of Civil Procedure, to enter Summary Judgment in favor of the Plaintiff on the grounds that the pleadings and papers on the file, and the attached MEMORANDUM demonstrates that there are no genuine issues as to material fact, and the Plaintiff is entitled to judgment as a matter of law.

Respectfully submitted,

_____
John R. Heard
"Attorney in Charge"
State Bar #09334500
Southern District of Texas Bar # 27169

Heard & Smith, L.L.P.
3737 Broadway, Suite 310
San Antonio, Texas 78209
(210) 820-3737 Fax (210) 820-3777

Jaime J. Pena
"Of Counsel"
State Bar #00786160

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT and the attached MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT has been mailed by postage prepaid, on this __21 st__ day of March, 2003, to:

Julia Denegre
Assistant United States Attorney
1301 Young Street, Suite 430
Dallas, Texas 75202

_____
John R. Heard
"Attorney in Charge"
State Bar #09334500
Southern District of Texas Bar # 27169

Heard & Smith, L.L.P.
3737 Broadway, Suite 310
San Antonio, Texas 78209
(210) 820-3737 Fax (210) 820-3777

Jaime J. Pena
"Of Counsel"
State Bar #00786160

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| Jose G. Alejandro, | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. |
| VS. | § § | B-03-018 |
| Jo Anne B. Barnhart Commissioner of the Social Security Administration | § § § § § | |
| Defendant. | § § | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

A. **STATEMENT OF THE ISSUES**

1. THE ADMINISTRATIVE LAW JUDGE ERRED BY FAILING TO GIVE ANY WEIGHT TO THE TREATING PHYSICIAN'S FINDING THAT THE PLAINTIFF IS DISABLED.

2. THE ADMINISTRATIVE LAW JUDGE IMPROPERLY DISCOUNTED THE PLAINTIFF'S ORGANIC AFFECTIVE DISORDER.

3. THE ADMINISTRATIVE LAW JUDGE FAILED TO RECONTACT THE TREATING PHYSICIAN PURSUANT TO SOCIAL SECURITY RULING 96-5P.

4. THE ADMINISTRATIVE LAW JUDGE FAILED IN HER DUTY TO FULLY AND FAIRLY DEVELOP THE PLAINTIFF'S CASE.

5. THE ADMINISTRATIVE LAW JUDGE IGNORED THE FINDINGS OF THE STATE AGENCY MEDICAL CONSULTANT (SAMC) IN VIOLATION OF SOCIAL SECURITY RULING 96-6P.

6. THE CREDIBLE TESTIMONY OF THE VOCATIONAL EXPERT SUPPORTS AN AWARD OF BENEFITS.

B. **STATEMENT OF THE CASE**

On August 6, 1999, the Plaintiff filed an application for Supplemental Security Income benefits under Title XVI of the Social Security Act, alleging disability beginning on July 20, 1985 (R.101-104). The Plaintiff was denied initially on December 6, 1999 (R.58) and on reconsideration on March 27, 2000 (R. 59). The Plaintiff requested a hearing on May 11, 2000 (R. 75-76).

The Plaintiff appeared at the hearing, which was conducted in Harlingen, Texas on April 17, 2001 (R. 12). On July 24, 2001, Administrative Law Judge Susan E. Jelen issued an unfavorable decision in the case (R. 9-19).

The Plaintiff filed a timely appeal to the Appeals Council on August 28, 2001 (R. 7-8). On May 10, 2002, the Appeals Council issued a decision denying the Plaintiff's request for review (R. 5-6). Subsequently, the Plaintiff brought the instant action before this honorable district court.

### C. STATEMENT OF FACTS AND MEDICAL EVIDENCE

The plaintiff was born on July 30, 1961 (R. 101). He was thirty-nine years old on July 24, 2001, the date of the Administrative Law Judge's decision denying him benefits (R. 9). The plaintiff completed nine years of formal education (R. 151). He has no past relevant work, as found by the Administrative Law Judge (R. 16).

On July 11, 1985, the plaintiff was hospitalized due to seizures (R. 458). A CT scan of the brain showed a ring lesion in the right hemisphere (R. 459). After treatment, the plaintiff was discharged with a diagnosis of brain abscess (R. 459). In February of 1990, the plaintiff was again hospitalized when he presented to the emergency room hyperventilating and expressing fear about his panic attacks or that he would die or go

crazy (R. 173). He was discharged nine days later with a diagnosis of generalized anxiety disorder, dysthymia, alcohol abuse and organic personality disorder (R. 174).

The plaintiff also suffers from Hepatitis C, having been diagnosed in August of 1996 by Dr. Albert Smith (R. 248).

The plaintiff has been under the care of Dr. Jose E. Igoa, a psychiatrist, since 1998 for organic affective disorder, depressed type with history of abscess in the brain (R. 211, 477, 478). A psychiatric assessment performed by Dr. Igoa on June 16, 1998 yielded a current Global Assessment of Functioning (GAF) score of 50, with the score in the last year also a 50 (R. 216).[1] In October 1998, Dr. Igoa opines that because of his brain abscess, plaintiff has "a poor recent memory, increased confusion, and compulsive behavior" (R. 211). In his professional opinion, plaintiff is unfit to care for his children (R. 211).

The SSA's consultative psychologist, Dr. Lynette Heslet, evaluated the plaintiff on October 9, 1998. Her test results yielded a performance I.Q. of 72 and Verbal and Full Scale IQ's of 65. (R. 200, 201). She states the plaintiff is functioning in the mild range of mental retardation cognitively, that it appears his cognitive problems are temporally related to his brain abscess, however, there is no pre-morbid information available to determine if these problems existed before the illness. (R. 202). The plaintiff and his wife did state to Dr. Heslet that the plaintiff was "different" after the onset of the brain abscess (R. 199). Dr. Heslet's diagnostic impressions include major depression,

---

[1] The Global Assessment of Functioning (GAF) is a standard rating scale of an individual's psychological, social and occupational functioning on a 100-point continuum of mental health to mental illness. The scale was created by the American Psychiatric Association and is published in the Diagnostic and Statistical Manual of Mental Disorders, 32 (4th. Ed. 1994). A GAF of 31-40 indicates the individual has "some impairment in reality testing or communication" or a "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood". A GAF of 41 to 50 represents serious symptoms or

personality disorder, polysubstance abuse by history, in remission, provisionally dementia due to brain abscess, and a GAF of 55 (R. 202).

On February 19, 1999, Dr. Igoa diagnosed Organic Affective Disorder, Depressed Type (R. 476). The plaintiff was exhibiting occasional breakthrough anxiety (R. 476). On September 17, 1999, the plaintiff was still displaying some symptoms of organic personality disorder and Dr. Igoa added the diagnosis of Organic Personality Disorder, Explosive Type to his progress note. (R.475). Dr. Igoa described the plaintiff as "still agitated, restless, at times short tempered, although not to the same intensity and degree as it was before (R. 475).

SSA consultative psychologist Dr. Stephen Williams subsequently saw the plaintiff on October 25, 1999 and diagnosed a depressive disorder and a learning disorder (R. 391). Dr. Williams reported evidence of significant depression with affect and mood somewhat tense (R. 389). The plaintiff's memory was found to be somewhat limited for recent events (R.390).

On July 25, 2000, Dr. Igoa rated the plaintiff as having "poor or none" mental abilities and aptitude needed to do unskilled work in 14 of 16 categories due to severe depressive symptoms and impulse control problems as a result of a brain abscess (R. 467-468). He also stated that the plaintiff is unable to manage benefits in his own best interest (R.469).

In April of 2001, Dr. Igoa stated that although plaintiff was pleasant, appropriate and animated, he still had symptoms of anxiety and some irritability (R.479). His assessment is "on a good plateau although still not being able to function well" (R. 479).

---

serious impairment in social, occupational, or school functioning. A GAF of 51 to 65 indicates that the individual has moderate symptoms or moderate difficulties in social, occupational or school functioning.

His opinion is that the plaintiff is totally and permanently disabled for gainful employment (R478). Also, in March of 2001, Dr. Albert Smith stated that the plaintiff's hepatitis C and the chronic liver abnormalities caused plaintiff to experience chronic fatigue and dizziness (R.477).

### D.   APPLICABLE LAW

The pertinent sections of law herein applicable are contained in the Social Security Act 42 U.S.C. § 405 (g) which provides that this Court has the power, based upon the pleadings and the transcript of administrative record, to enter a judgment affirming, modifying or reversing the decision of the Secretary (Commissioner), with or without remanding the case for hearing.

The appropriate standard of review is that the Court must determine whether the Commissioner's decision is supported by substantial evidence in the record as a whole and whether the decision contains error of law. Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir.1993).

The administrative decision is not supported by substantial evidence if there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983); Abshire v. Bowen, 848 F.2d 638, 640 (5th Cir. 1988). The "substantial evidence test" does not involve a simple search of the record for isolated bits of evidence which supports the Commissioner's decision; the Court must consider the record as a whole. Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

Although the federal courts must defer to the Commissioner's findings of fact and uphold them if supported by substantial evidence, they are nevertheless free to review <u>de novo</u> questions of law and to set aside any administrative decision if the proper legal

standards were not followed or applied even if the decision is otherwise supported by substantial evidence. Western v. Harris, 633 F.2d 1204, 1206 (5th Cir. 1981); Cook v. Heckler, 750 F. 2d 391, 392-93 (5th Cir. 1985); Leidler v. Sullivan, 885 F.2d 291, 294 (5th Cir. 1989).

The administrative decision cannot be upheld if it is contrary to controlling regulations and/or circuit case law. There are specific rules of law which must be followed in deciding whether evidence is substantial to support a denial of disability benefits. An administrative decision is not supported by substantial evidence if the evidence was evaluated in light of an improper legal standard. Therefore, the failure of the Commissioner to follow those rules in reversible error. See Leidler, 885, F.2d at 294. See also Frey v. Bowen, 816 F.2d 508 (10th Cir. 1987); Nielson v. Sullivan, 992 F.2d 1118 (10th Cir. 1993).

Finally, the Commissioner may not argue that, even if the ALJ misapplied the law, the decision should nevertheless be upheld because it is supported by substantial evidence. The substantial evidence standard has no application when the ALJ has applied an erroneous legal standard. Although the Social Security Act provides that the Commissioner's findings of fact are conclusive if supported by substantial evidence, "no similar presumption of validity attaches to the [Commissioner's] conclusions of law, including determinations of the proper legal standard to be applied in reviewing claims and the proper allocation of the burden of proof." See Western, 633 F.2d at 1206. See also Cook, 750 F.2d at 393; Leidler, 885 F.2d at 294.

The court has discretion to remand a case for additional evidence and findings or to award benefits. The court may direct an award of benefits where the record has been

fully developed and where further administrative proceedings would serve no useful purpose because the Commissioner would be required to find the Plaintiff disabled on the basis of that record. See Randall v. Sullivan, 956 F.2d 105, 109 (5th Cir. 1992) [inordinate delay in benefits to which Plaintiff is clearly entitled]. See also Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996) [awarding benefits when the Commissioner fails to provide sufficient reasons for rejecting uncontroverted evidence].

### E. ARGUMENT

**ISSUE 1.    THE ADMINISTRATIVE LAW JUDGE ERRED BY FAILING TO GIVE ANY WEIGHT TO THE TREATING PHYSICIAN'S FINDING THAT THE PLAINTIFF IS DISABLED.**

**ISSUE 2.    THE ADMINISTRATIVE LAW JUDGE IMPROPERLY DISCOUNTED ORGANIC AFFECTIVE DISORDER.**

**ISSUE 3.    THE ADMINISTRATIVE LAW JUDGE FAILED TO RECONTACT THE TREATING PHYSCIAN PURSUANT TO SOCIAL SECURITY RULING 96-5P.**

**ISSUE 4.    THE ADMINISTRATIVE LAW JUDGE FAILED IN HER DUTY TO FULLY AND FAIRLY DEVELOP THE PLAINTIFF'S CASE.**

Although the Administrative Law Judge referenced the findings of the plaintiff's treating psychiatrist, Dr. Igoa, that the plaintiff suffered from organic affective disorder and is "totally and permanently disabled for gainful employment" (R. 478), she completely rejected the treating source opinion in violation of Social Security Ruling ("SSR") 96-2p. In discussing Dr. Igoa's opinion in her decision, the administrative law judge states: "Jose Igoa, M.D., said that the claimant was disabled in April 2000. This opinion is outside his expertise and is not supported even by his examinations" (R.15). "The medical evidence indicates that the claimant has seizure disorder, controlled, Organic Personality Disorder with depression and hepatitis C" (R. 13). "Since the

opinions expressed by Dr. Igoa are not supported by the examinations and testing and are inconsistent with the record they are not entitled to any weight" (R.15). This is contrary to SSR 96-2p which states:

> "A finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted even if it does not meet the test for controlling weight".

The Administrative Law Judge is under an obligation to provide reasons for disregarding the treating physician's findings in accordance with the factors contained in 20 CFR 404.1527 (d) (2). The rationale for imposing this obligation on the Administrative Law Judge is detailed in the case of Newton V. Apfel, 209 F. 3d 448 (5th Cir. April 25, 2000). After describing the factors for evaluating treating physician opinion contained in 20 CFR 404.1527 (d) (2), which include the specialization of the treating physician, the Court in Newton, citing cases in other circuits, stated "this court now similarly holds that an Administrative Law Judge is required to consider each of the section 404.1527 (d) (2) factors before declining to give any weight to the opinions of the claimant's treating specialist." Newton, at 456. The court further stated:

> "This Court concludes that, absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. 404.1527 (D) (2)." Newton, at 453.

Since the plaintiff's treating physician, Dr. Igoa, is a psychiatrist, it is evident that the Administrative Law Judge failed to utilize the factors in section 404.1527 (d) (2) to assess the weight to be given Dr. Igoa's opinion, and failed to accord it deference as required by SSR 96-2p. She also obviously did not consider a psychiatrist to possess the requisite expertise to tender an opinion as to the nature and severity of the plaintiff's condition, whom the doctor has been treating since June of 1998 (R. 478).

Furthermore, SSR 96-5p imposes an obligation on the Administrative Law Judge to recontact the treating source. SSR 96-5p states:

> "Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion."

This longstanding requirement of the Social Security regulations is found in 20 CFR 404.1512 (e). This regulation states:

> "(e) Recontacting medical sources. When the evidence from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.
>
> (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source. In every instance, where

> medical evidence is obtained over the telephone, the telephone report will be sent to the source for review, signature and return."

The court in <u>Newton</u> also described the Administrative Law Judge's obligation to recontact the treating physician. Referring to 20 CFR 404.1512 (e) and additionally basing its decision on the Administrative Law Judge's duty to fully develop the record, the court found that the Administrative Law Judge failed in his duty by failing to recontact the treating physician to obtain supplemental information. The rational of <u>Newton</u> fully applies to this case. Minimally, the Administrative Law Judge was required to recontact Dr. Igoa before rejecting his opinion outright. In fact, Dr. Igoa made himself available if needed. In a letter dated April 6, 2001 regarding the plaintiff's condition and disability, he stated: "Please do not hesitate in contacting me should you need more data." (Tr.478). By failing to recontact the treating source, the Administrative Law Judge failed in her duty to fully and fairly develop the plaintiff's case. <u>Kane v. Heckler</u>, 731 F.2d 1216 (5th Cir. 1984).

Finally, there is also an absence of reliable medical evidence in the record from any treating or examining physician directly controverting Dr. Igoa's opinion that the plaintiff suffers from organic affective disorder. Accordingly, the Administrative Law Judge should have performed a detailed analysis of Dr. Igoa's views under the criteria set forth in 20 CFR 404.1527 (D) (2).

**ISSUE 5.   THE ADMINISTRATIVE LAW JUDGE IGNORED THE FINDINGS OF THE STATE AGENCY MEDICAL CONSULTANT (SAMC) IN VIOLATION OF SOCIAL SECURITY RULING 96-6P.**

The Administrative Law Judge also violated social security ruling (SSR) 96-6P by ignoring the findings of the state agency medical consultants (SAMC). In an evaluation

dated October 22, 1998, the same found the Plaintiff did have a severe mental impairment (R.220). The SAMC further found that the Plaintiff's impairments often resulted in deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner (R.227). The SAMC also found the degree of limitation regarding episodes of deterioration or decompensation in work or work like setting to be once or twice (R.227). This finding is supported by Dr. Williams in his report of October 25, 1999 wherein he states that "some decompensation have been reported" (R.390). The Administrative Law Judge, on the other hand, finds that there are no episodes of decompensation (R.15). The SAMC further found that the Plaintiff was moderately limited in the following areas: the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customery to tolerances; the ability to make simple work-related decisions; the ability to complete a normal workday and workweek without interruptions from psychological based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to accept instructions and respond appropriately to criticism from supervisors and the ability to respond appropriately to changes in the work setting (R.204-203).

Pursuant to SSR 96-6P, the Administrative Law Judge was required to give significant weight to the findings of the SAMC and to provide an explanation if she disagreed with those findings.[2] In this case, the Administrative Law Judge did not

---

[2] SSR 96-6P provide, in pertinent part:
Because State Agency Medical and Psychological Consultants and other program physicians an psychologists are experts in the Social Security Disability programs, the rules in 20 CFR 404.1527 (f) and 416.927 (f) require Administrative Law Judges and the Appeals Council to consider their findings of fact about the nature and severity of an individual's impairment(s) as opinions of nonexamination physicians

reference these findings of the SAMC, and, accordingly, did not provide any rationale for disregarding the findings.

**ISSUE 6.    THE CREDIBLE TESTIMONY OF THE VOCATIONAL EXPERT SUPPORTS AN AWARD OF BENEFITS.**

The Administrative Law Judge found that the claimant had a residual functional capacity to work at all exertional levels with work involving simple instructions, no fast paced, production quotas and no work at heights or around dangerous moving machinery (R.16). She further found that Plaintiff's ability to work is significantly compromised at all levels due to his non-exertional limitations (R.17). During the Plaintiff's hearing, the Administrative Law Judge propounded the following hypothetical to the vocational expert:

> "Q    all right. I want you to assume someone of the same age, education and prior work history. I want you to further assume the individual has no exertional limitations, but should have seizures precautions" (R.52)?
>
> "Q    and it would also be limited to simple work" (R53)?
>
> "Q    just based on that, would there be work in the economy" (R.53)?
>
> "A    yes, there would be the work that he is doing, and was doing, as well as a few other examples, maybe, for example, a laundry worker, its medium and unskilled, 'another would be, let's say, kitchen helper'. Once again it's medium and unskilled" (R.53).
>
> "Q    If you added that limitation that someone should not be involved in fast-paced work". "What would that do to the jobs that you've (incredible)" (R54)?
>
> "A    it would not eliminate those" (R.54).
>
> "Q    and if you have an individual who requires supervision---what does that do"(R.54)?

---

made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions.

"A   if they require consistant supervision, then the person would not be able to maintain employment"(R.54).

"Q   if you have a problem with short-term memory, and the areas of difficulties remembering other things...what does that do to unskilled work, generally.?" (R.54)?

"A   then, once again, you would not be able to maintain employment" (R.54).

"Q   okay, then all this work, is eight hours a day and forty hours a week" (R.54)?

"A   full-time, that's correct" (R.54).

" Q   so, if you have an individual who can't stand work at that level, does that eliminate work" (R.54)?

"A that's true" (R.55).

"Q   [inaudible] an individual who might miss about 4 days a month? What would that do to work: (R.55)?

"A that would also eliminate work" (R.55).

The Administrative Law Judge's questions in her hypothetical regarding the need for constant supervision, short-term memory problems, difficulties remembering other things, inability to sustain employment at the level of eight hours a day and forty hours a week plus miss work 4 days a month are appropriate. There are supported by and consistent with the findings of the Plaintiff's treating physician, Dr. Igoa (R.467-69). The Administrative Law Judge failed to accept the treating physician's findings and to adopt then into her decision. This failure, coupled with her failure to recontact Dr. Igoa before rejecting his findings outright, renders her decision unsupported by substantial evidence. (Ripley or Newton).

Accordingly, the credible testimony of the vocational expert supports an award of benefits, the commissioner has failed to meet her burden at step 5 of the sequential

analysis, and the Plaintiff should be awarded benefits without an additional hearing. Bowling v. Shalala 36 F. 3d 431-436 (5th Cir.1994).

## CONCLUSION

The Administrative Law Judge failed to give proper weight to the findings of the treating physician, to explain her reason for disagreeing with those findings in substantial detail, and further failed to recontact the treating physician, all in violation of Social Security Ruling 96-5p. The Administrative Law Judge also erred by disregarding the findings of the State Agency Medical Consultants without explanation, in violation of SSR 96-6p. The credible testimony of the vocational expert supports an award of benefits, and the plaintiff should be awarded his benefits at this time without the necessity of an additional hearing. In the alternative, the plaintiff requests that his case be remanded.

Respectfully submitted,

By: _____
John R. Heard
"Attorney in Charge"
State Bar #09334500
Southern District of Texas Bar # 27169

Heard & Smith, L.L.P.
3737 Broadway, Suite 310
San Antonio, Texas 78209
(210) 820-3737 Fax (210) 820-3777

Jaime J. Pena
"Of Counsel"
State Bar #00786160