32

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# -BROWNSVILLE DIVISION-

United States District Court
Southern District of Texas
ENTERED
23rd
APR 2 0 2001

Michael N. Milby, Clerk of Court
By Deputy Clerk

|  |  |  |
|---|---|---|
| DAN MORIN, DIANA MORIN, JENNIFER MAY GWIN, DANNY MORIN, AND RUBEN RIOS SR., AS NEXT FRIEND OF RUBEN RIOS, JR., A MINOR, MARIA D. LOPEZ, AS NEXT FRIEND OF BRIAN MORIN, A MINOR, | § § § § § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. B-00-104 AND B-00-105 |
| VS. | § § | |
| RALPH D. MOORE, JOSEPH VASQUEZ, JIM SCHEOPNER, AND CITY OF HARLINGEN, TEXAS, | § § § § | |
| Defendants. | § § | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Pending before the Court are the following Motions:

1. Defendants' Motion to Dismiss Plaintiffs' Complaint Under FRCP 12 (b)(4,5) and Under FRCP 12 (b)(6). (Docket No. 6).

2. Individual Defendants' Motion to Dismiss Complaint Under FRCP 12(b)(6) Based on Qualified Immunity. (Docket No. 7).

3. Defendants' Motion to Dismiss Plaintiffs' Amended Complaint Under FRCP 12(b)(6). (Docket No. 16).

4. Defendants' Motion to Dismiss (1) Donald Morin, et al.'s First Amended Complaint, and (2) Dan Morin's Second Amended Complaint Under FRCP 12(b)(6) for Failure to State a Claim. (Docket

1

No. 23).

5. Individual Defendants' Motion to Dismiss (1) Donald Morin, et al.'s First Amended Complaint, and (2) Dan Morin's Second Amended Complaint Under FRCP 12 (b)(6) Based on Qualified Immunity. (Docket No. 24).

The first three of these motions, Docket Numbers 6,7, and 16 are Moot. The issues raised in those motions have been reurged in Docket Numbers 23 and 24.

## PROCEDURAL BACKGROUND

Two cases presenting similar claims arising out the same incident were filed in the United States District Court for the Southern District of Texas, Brownsville Division. The first, Civil Action No. B-00-104, presented the claims of Dan Morin Individually and as Representative of the Estate of Margarita Flores, Deceased. The second, Civil Action No. B-00-105, presented the claims of Donald Morin, Diana Morin, Jennifer May Gwin, Danny Morin, and Ruben Rios Sr. as Next Friend of Ruben Rios, Jr., a Minor, Maria D. Lopez, as Next Friend of Brian Morin, a Minor. The Defendants in both cases are Ralph D. Moore, Joseph Vasquez, Jim Scheopner and the City of Harlingen, Texas. On September 18, 2000, these cases were consolidated under Civil Action No. B-00-104. (Docket No. 22).

## FACTUAL BACKGROUND

According to Dan Morin's Second Amended Complaint (Docket No. 20), and Donald Morin's First Amended Complaint (Docket No. 8 in Cause No. B-00-105), on July 7, 1998, Ernest Moore, the son of defendant Ralph D. Moore, took an AK-47 rifle from his father's house and went to the home of Margarita Flores looking for his ex-girlfriend, Julie Cox. During a confrontation at the Flores home, Ernest Moore shot Dan Morin, Delia Morin, and Margarita Flores, Delia and Dan

2

Morin's mother.  Margarita Flores and Delia Morin were killed.  Dan Morin was wounded.

The plaintiffs are:

The Dan Morin Lawsuit: (B-00-104)

Dan Morin, individually and as representative of the Estate of Margarita Flores, Deceased.

The Donald Morin Lawsuit (B-00-105):

Donald Morin, Danny Morin, and Jennifer May Gwin.  These three are the children of Margarita Flores, Deceased.  Ruben Rios, Next Friend of Ruben Rios, Jr., Maria D. Lopez, Next Friend of Brian Morin, a Minor.  The two minors are the survivors of Delia Morin.

The defendants are Jim Scheopner, the Harlingen, Texas, Police Chief at the time; Ralph D. Moore, a Harlingen Detective and father of Ernest Moore; Joseph Vasquez, another Harlingen Detective officer; and the City of Harlingen, Texas.

PLAINTIFFS' CLAIMS

Plaintiffs all claim that the AK-47 used by Ernest Moore had been given by a private citizen to the Harlingen Police Department.  Instead of destroying the gun as the donor had wished, it was turned over to Defendant Vasquez who later turned it over to Defendant Moore.  Plaintiffs claim that these transfers were with the knowledge and consent of Chief Scheopner and the Harlingen Police Department.

Plaintiffs seek recovery pursuant to 42 U.S.C. § 1983 for violation of their Fourth and Fourteenth Amendment rights.  They also seek recovery under the Texas Tort Claims Act and the Texas Wrongful Death and Survival Statutes.

In their Second Amended Complaint (Docket No. 20) the Dan Morin plaintiffs allege in paragraph 9 that the City of Harlingen is vicariously liable for the actions of the named officers and

3

employees. These plaintiffs assert § 1983 causes of action against the City and Chief Scheopner for creating a dangerous environment which resulted in the deaths of Margarita Flores and Delia Morin and the wounding of Dan Morin. They also claim that the City should have removed Chief Scheopner prior to the incident in this case. The balance of these plaintiffs' claims are state law claims.

The Donald Morin plaintiffs in their First Amended Complaint (Docket No. 8 in B-00-105) claim that the Defendants' conduct created a dangerous environment and a state-created danger which led to the shootings in their case. These plaintiffs also make state law claims against all the defendants.

## 12(B)(6) MOTIONS

In their joint Motion to Dismiss (Docket No. 23), defendants argue that there are no circumstances under which relief can be granted to plaintiffs. They argue that plaintiffs have no Fourth Amendment claims because the shootings are not a "seizure" under the Fourth Amendment. Next, defendants argue that due process does not require them to prevent harm by a private citizen.

With respect to the state law claims pled by the plaintiffs, defendants argue that the facts which are alleged by plaintiffs, that defendant Moore improperly stored the rifle in such a way that Ernest Moore had access to it, do not raise a negligent entrustment claim. Defendants also argue that in Texas a peace officer has no liability to the victim of a crime for failure to prevent the crime. Finally, Defendants argue that they had no duty to destroy the rifle.

## THE 12(B)(6) STANDARD

A motion to dismiss filed pursuant to FED. R. CIV. P. 12(b)(6) should be granted only if a plaintiff can prove no set of facts which would entitle him to relief. *See Walker v. South Bell Central*, 904

4

F.2d 275,276 (5th Cir. 1990). All well-pleaded facts must be accepted by the court as true and construed in favor of the plaintiff. *See Conley v. Gibson*, 335 U.S. 41, 45-46 (1957)

## FEDERAL CAUSES OF ACTION

A § 1983 claim is not itself a source of substantive rights. *See Graham v. Connor*, 490 U.S. 396, 393 (1989). The first inquiry is to isolate the precise provision of the federal Constitution that is allegedly infringed. *See id.* at 394. Morin argues that defendants violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution. (Second Amended Complaint at ¶ 1). The Fourth Amendment applies when the alleged use of excessive force arises from a search or seizure of the person. *See id.* at 394; *County of Sacramento v. Lewis*, 523 U.S. 833, 844-45, 118 S.Ct. 1708, 1715-16, 140 L.Ed.2d 1043 (1998). No one suggests that there was a search in this case. A "seizure" occurs only when government agents deliberately cause the termination of an individual's freedom through means intentionally applied to that individual. *See Brower v. Inyo*, 489 U.S. 593, 596-97 (1989).

In *Lewis*, the Supreme Court made it clear that a Fourth Amendment seizure occurred only when the government caused an intended termination of freedom of movement through means intentionally applied to that individual. *See Lewis*, 523 U.S. at 844, 118 S.Ct. at 1715. Consequently, unintended injuries to bystanders or hostages during an arrest are not a seizure under the Fourth Amendment. *See id.* Likewise, there is no Fourth Amendment claim when the force is not directed deliberately at the plaintiff. *See Petta v. Rivera*, 143 F.3d 895, 901 (5th Cir. 1998). Morin has not alleged that defendants deliberately directed force at plaintiffs. Accordingly, Morin has failed to allege facts sufficient to state a claim under the Fourth Amendment.

Outside the context of a seizure, a person injured as a result of police misconduct may

5

prosecute a substantive due process claim under § 1983. *See Petta*, 143 F.3d at 910-11. The discussion of Morin's Fourteenth Amendment constitutional claims must begin with *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). In *DeShaney*, the Supreme Court first noted that the Due Process Clause "is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *Id.* at 195, 109 S.Ct. at 1003. It forbids the State itself to deprive individuals of protected interests without due process, but its language does not impose "an affirmative obligation on the State to ensure that those interests do not come to harm through other means." *Id.* The Court affirmed summary judgment for the defendants, stating:

> As a general matter, then, we conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.

*Id.* at 197, 109 S.Ct. at 1004. Thus, *DeShaney* appears to defeat the claim that defendants violated the plaintiffs' due process rights by failing to protect the plaintiffs from private violence committed by Ernest Moore. Plaintiffs often seek to avoid *DeShaney* by arguing entitlement to the "state-created danger" theory, which the Fifth Circuit has yet to adopt or reject. *See Randolph v. Cervantes*, 130 F.3d 727, 731 (5th Cir.1997) ("The state-created danger theory has not been adopted in this Circuit."). Thus far, the Fifth Circuit has decided all cases in which the theory has been pleaded by holding that the facts did not support a claim even if the theory were adopted. *See Doe v. Hillsboro Independent School District*, 113 F.3d 1412, 1415 (5th Cir.1997) (en banc) (facts did not trigger a duty, "even if we were to adopt such a theory"); *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 201 (5th Cir.1994), *cert. denied*, 514 U.S. 1017, 115 S.Ct. 1361, 131 L.Ed.2d 218 (1995) (even if the theory is constitutionally sound, the pleadings in the case fell short of the

6

"demanding standard" for liability).[1]

## QUALIFIED IMMUNITY

Defendants have raised the defense of qualified immunity. As a preliminary matter, the Court notes that the Second Amended Complaint (Docket No. 20) does not specify whether the defendants are being sued in their individual or official capacities. A § 1983 complaint that fails to specify the capacity in which the defendants are being sued is ordinarily construed to be against them in their official capacity. "In the absence of any express statement that the parties are being sued in their individual capacities, an allegation that the defendants were acting under color of law generally is construed as a suit against the defendants in their official capacities only." *Yeksigian v. Nappi*, 900 F.2d 101, 104 (7th Cir. 1990); *Kolar v. Sangamon County*, 756 F.2d 564, 568 (7th Cir. 1985).

However, the fact that a complaint does not state the capacity under which the defendant is being sued is not conclusive that it is only in the defendant's official capacity. *See Conner v. Reinhard*, 847 F.2d 384, 394 n. 8 (7th Cir. 1988). "A court must also consider the manner in which the parties have treated the suit." *Id.* The parties in this case have admittedly operated under the

---

[1]The Court notes that, even if the Fifth Circuit were to recognize the state-created danger exception, the application of the theory to the facts of this case would be of questionable value. To find liability under the state-created danger exception, "[t]he environment created by the state actors must be dangerous; they must know it is dangerous; and, to be liable, they must have used their authority to create an opportunity that would not otherwise have existed for the third party's crime to occur." *Dallas Indep. Sch. Dist.*, 38 F.3d at 201. First, "[t]he key to the state-created danger cases ... lies in the state actors' culpable knowledge and conduct in affirmatively placing an individual in a position of danger, effectively stripping a person of her ability to defend herself, or cutting off potential sources of private aid." *Id.* (quotations and citation omitted). Taking the allegations in Morin's complaint as true, no set of facts suggest that defendants had culpable knowledge that they were affirmatively placing an individual in a position of danger. Nor did defendants impair self-defense or restrict potential sources of private aid. Second, the officials' actions must place the plaintiff at a specific risk, as opposed to a risk that affects only the public generally. *See Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1997); *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1153 (3rd Cir. 1995); *see also Saenz v. Heldenfels Bros., Inc.*, 183 F.3d 389, 392 (5th Cir. 1999) (The state-created danger theory is inapposite without a known victim.). Finally, the official must have actual knowledge that the risk of harm exists. *See Doe*, 113 F.3d at 1415. While Morin alleges that departmental policies precipitated the chain of events that led to Ernest Moore possessing the AK-47 rifle, Morin does not allege that any state actor had actual knowledge of any specific risk of harm to any known victim.

7

assumption that the defendants are being sued in their individual capacities. This assumption is supported by the defendants' raising of the defense of qualified immunity, which is applicable only in individual capacity suits. *See Kentucky v. Graham*, 473 U.S. 159, 166-67, 105 S.Ct. 3099, 3105-06, 87 L.Ed.2d 114 (1985). Thus, the Court will honor the obvious intentions of the parties and evaluate the issue of qualified immunity as a defense to a suit brought against a government official in his individual capacity.

The Fifth Circuit case of *Saenz v. Heldenfels Bros., Inc.*, provides a clear framework for analyzing a qualified immunity defense in the context of state-created danger claim.[2] *See Saenz*, 183 F.3d 389. To prevail on § 1983 claim against a state official performing a discretionary function, and to overcome the qualified immunity defense, a plaintiff must show that the officer violated "clearly established ... constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The first inquiry is whether the appellants have alleged the deprivation of a constitutional right. *See Conn v. Gabbert*, 526 U.S. 286, 290, 119 S.Ct. 1292, 1295, 143 L.Ed.2d 399 (1999); *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 1714 n. 5, 140 L.Ed.2d 1043 (1998) ("[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all."). Only if the right exists does the Court need to determine whether that right was clearly established at the time of the alleged violation. *See Saenz*, 183 F.3d at 391.

---

[2]At least one district court in the Fifth Circuit has held that any qualified immunity challenge predicated on a state-created danger theory automatically fails as a matter of law because the Fifth Circuit Court of Appeals has declined to adopt the state-created danger theory. *See C.A. v. Lowndes County Dept. of Family and Children Services*, 93 F.Supp.2d 744 (N.D.Miss. 2000).

8

In *Saenz*, estates and survivors of motorists who were killed when a drunk driver struck their car brought a § 1983 action against the county and deputy sheriff, alleging that the deputy sheriff ordered a reserve deputy to refrain from investigating a drunk driver minutes before the accident occurred, and that the county had a custom or policy of tolerating the deputy sheriff's refusal to enforce drunk driving laws. *See id.* The Court of Appeals cited four reasons for their decision to grant qualified immunity to the officers. *See id.* The reasoning is equally pertinent to the case at bar.

First, the Court looked to the specific action taken by the officers and noted that "neither the text nor the history of the Due Process Clause supports holding that an officer who orders another officer to refrain from arresting a suspected drunk driver has committed a constitutional tort." *Id.* Similarly, in the instant case neither the removal of the AK-47 from the Harlingen Police Department nor the entrustment of the gun to Detective Moore rises to the level of a Fourteenth Amendment constitutional tort.[3] The guarantee of due process has been limited to situations where a state officer deliberately chooses to deprive a person of life, liberty, or property. *See id.* (*citing Collins v. City of Harker Heights*, 503 U.S. 115, 127 n. 10, 112 S.Ct. 1061, 1069 n. 10, 117 L.Ed.2d 261 (1992)). The transfer of the rifle to Detective Moore cannot be characterized as a governmental

---

[3]In the companion case of *Rodriguez v. City of Harlingen*, Civil Action No. B-98-163, Judge Hilda Tagle of this Court faced issues similar to those found in the instant case. Judge Tagle assumed without deciding that the Fifth Circuit would recognize a state created danger cause of action given the facts of the *Rodriguez* case. The apparent inconsistency between the *Rodriguez* case and the one at bar is resolved by distinguishing the merits of the two case. Ernest Moore had already shot three people prior to the events leading to the death of Rodriguez. The plaintiffs argued that Detective Moore "infringed on the decedent's rights by failing to warn the decedent of the threat posed by his son or by failing to detain E. Moore despite knowledge that he had most probably committed a crime, had taken the AR-15 assault rifle, and was hiding nearby." Nunc Pro Tunc Order at pp. 8-9. Thus, the defendants in *Rodriguez* had knowledge of Ernest Moore's criminal intent, a knowledge that was not yet present in the case at bar. As the Fifth Circuit has stated, "The key to the state-created danger cases...lies in the state actor's culpable knowledge and conduct affirmatively placing an individual in a position of danger..." *Dallas Indep. Sch. Dist.*, 38 F.3d at 201. In the present case, Ernest Moore had yet to begin his rampage. Given these facts, it is difficult to conceive that the Fifth Circuit would hold that Moore's actions in storing the firearm at his house would give rise to a state created danger cause of action on behalf of the Morin plaintiffs.

decision to deny defendants their life, liberty, or property – especially since the officers were never subjectively aware that Ernest Moore would use the rifle to commit violent acts. A contrary conclusion would "make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States." *Id.* (*citing Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976)). Second, the Court of Appeals stated that appellants cited no cases extending substantive due process to situations similar to the facts in that particular case. The same holds true for the present action. Third, the Court stated that "judicial self-restraint" and "exercise the utmost care" when asked to find new rights secured by the Due Process Clause. *Id. at 392* (*citing Collins*, 503 U.S. at 125, 112 S.Ct. at 1068). The Court declined to issue the novel ruling that when an officer orders another officer not to apprehend a drunk driver, "a third party unknown to the officer at the time of the order who is later injured by the drunk driver has a constitutional claim against the ordering officer." *Id.* Again, this logic counsels this Court not to extend the parameters of the Due Process Clause to encompass a claim by a then-unknown third party against officers who removed a weapon from the Harlingen Police Department. Finally, The Court of Appeals concluded that its holding was virtually compelled by the decision in *DeShaney*. *See id.* The Court reasoned that if the state officer in *Deshaney* had no duty to protect an identified person from a known danger presented by a third party, the due process clause could not be interpreted to protect an unidentified member of the public from an increased risk of harm. *See id.* Therefore, the defendants' actions that culminated with the storage of an AK-47 rifle at Detective Moore's residence, while imprudent and ultimately tragic, were not sufficiently willful and targeted toward specific harm to remove the case into the domain of constitutional law. *See id.*

Plaintiffs also sued the City of Harlingen under § 1983, arguing that the City maintained

policies and failed to enforce existing procedures which ultimately allowed Captain Vasquez and

Detective Moore to obtain the AK-47. As the *Saenz* court correctly pointed out, however, "[i]f a

person has suffered no constitutional injury at the hands of the individual police officer, the fact that

the departmental regulations might have *authorized* [his actions] is quite beside the point." *Id.*

(*citing Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986)); *see*

*also Leatherman v. Tarrant County Narc. Intel. and Coord. Unit*, F.3d 1388, 1398 n. 15 (5th

Cir.1994) (stating that a municipality cannot be liable when the "individual officers have been

exonerated of any underlying constitutional violation"). Accordingly, the City of Harlingen cannot

be held liable under a § 1983 claim.[4]

Plaintiffs have not pled constitutional injuries. Their constitutional claims should be

dismissed.

## STATE LAW CLAIMS

Plaintiffs argue that defendants are liable under negligent entrustment and failure to protect

theories. Plaintiffs do not claim that Ralph D. Moore gave the rifle to Ernest Moore. However,

Plaintiffs all allege that Ernest Moore was known to be "physiologically unstable" and a drug abuser.

(Second Amended Complaint at ¶ 14). The court presumes that plaintiffs mean that Ernest Moore

had psychological problems. The claim against Ralph D. Moore is that the gun used by Ernest was

stored in a gun safe in Ernest's room and that Ernest had access to it. This is not enough to make out

---

[4]In the companion case of *Rodriguez v. City of Harlingen*, Civil Action No. B-98-163, Judge Hilda Tagle denied the motion to dismiss as to the plaintiffs' state created danger claims against the city. The denial was predicated on the Court having assumed that defendants violated the state-created danger exception to the general *DeShaney* rule that the government has no constitutional duty to protect the public against private actors. As discussed above, the factual differences in the present controversy dictate that this Court find that no cognizable due process violation occurred. As such, the City of Harlingen cannot be held liable.

a claim of negligent entrustment. Texas courts have court analogized negligent entrustment of a firearm to negligent entrustment of an automobile. *See Kennedy v. Baird*, 682 S.W.2d 377, 378-79 (Tex.App. – El Paso 1984, no writ). In *Kennedy* the court stated :

> The establishment of the negligent entrustment of an automobile theory of recovery was developed by the courts because of the realization that one who entrusts an automobile to another owes a duty to the general public not to be negligent in such entrustment.

*Id.* at 378. Negligent entrustment requires a positive act. *See Prather v. Brandt*, 981 S.W.2d 801, 806 (Tex.App. – Hous. [1st Dist.] 1998, pet. denied). If Ernest Moore had taken his father's car keys from his pocket and had negligently caused an accident, it is difficult to see how the father would be liable under the negligent entrustment theory of recovery. In like manner, it is difficult to see how Ralph Moore can be liable for Ernest having taken a gun from the gun safe and attacking the Flores home.

Texas law does not impose liability for failing to take action to prevent a crime on police. *See Munoz v. Cameron County*, 725 S. W. 2d 319 (Tex.App. – Corpus Christi 1986, no writ). Plaintiffs' state law claims should be dismissed.

Accordingly, it is **RECOMMENDED** that Defendants' Motion to Dismiss (1) Donald Morin, Et Al.'s First Amended Complaint, and (2) Dan Morin's Second Amended Complaint Under FRCP 12(b)(6) for Failure to State a Claim (Docket No. 23) should be **GRANTED**. It is further **RECOMMENDED** that Individual Defendants' Motion to Dismiss (1) Donald Morin, Et Al.'s First Amended Complaint, and (2) Dan Morin's Second Amended Complaint Under FRCP 12(b)(6) Based on Qualified Immunity (Docket No. 24) should be **GRANTED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being

12

served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415 (5th Cir. 1996).

DONE at Brownsville, Texas, this 20th day of April, 2001.

John Wm. Black
United States Magistrate Judge

13