*H9*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DAN MORIN, Individually and as | § | United States District Court<br>Southern District of Texas<br>FILED |
| Representative of the Estate of | § | |
| Margarita Flores, Deceased | § | **FEB 1 8 2003** |
| Plaintiff-Appellant | § | |
| | § | Michael N. Milby<br>Clerk of Court |
| VS. | § | CAUSE NO. B-00-104 |
| | § | |
| THE CITY OF HARLINGEN, TEXAS | § | |
| Defendants-Appellees | § | |

## PLAINTIFF'S MOTION FOR CONTINUANCE TO RESPOND TO
## RULE 56 MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Dan Morin, Individually and as Representative of the Estate of Margarita

Flores, Deceased, vs. City of Harlingen, et al., and make this Rule 56(f), Fed. R. Civ. P. Motion for

Continuance requesting that this Court enter a Scheduling Order to (a) set this case for trial; (b) set

discovery deadlines of at least five months; and (c) postpone the response date for six months to

respond to Defendants' Motion for Summary Judgment, and as grounds therefore would show as

follows:

### I.
### NATURE OF THE PROCEEDINGS

1.1     Defendants allege that the current status of the suit and the remaining claims of

Plaintiffs are limited to a negligence and negligent entrustment action arising solely out of the use of

the MAK-90 assault rifle allegedly employed by Ernest Moore to murder members of Plaintiff's

family and injure Plaintiff Dan Morin. This reliance of Defendants' Motion for Summary Judgment

is based on Section 101.021(2) Tex. Civ. Prac. & Remedies Code annotated, which provides that the

"use" or "misuse" of personal property can make the City, as a defendant, liable for the actions of its employees. However, as will hereinafter be shown, Plaintiffs are not solely dependant on the claims relating to the MAK-90 assault rifle ("AKA 47 assault rifle") and their reliance on the same is fatal to the granting of their motion for summary judgment as will hereinafter be shown. In order to develop the evidence to oppose this summary judgment, Plaintiffs will require additional time for discovery and a continuance of the date for response to Defendants' Motion for Summary Judgment.

1.2     As the Court's record reflects, upon filing this initial lawsuit, the motions for dismissal were immediately filed by Defendants and after the Magistrate ruled and the Court granted the same, no discovery or other activity has occurred in this lawsuit since that time. Instead, the parties have been in the Fifth Circuit arguing the propriety of the motions to dismiss.

II.
ARGUMENT AND AUTHORITIES

2.1     *Res Judicata:* At the outset, it should be noted that the Fifth Circuit recently denied a Motion for Rehearing in which the Defendants asserted the same arguments as are advanced in their Motion for Summary Judgment pending before this Honorable Court. See *Morin v. Moore,* 309 F.3d 316 (5th Cir., 2002) *rehearing denied* by *Morin v. Moore,* ___ F.3d ___ (5th Cir., Jan. 9, 2003). As a result, the Fifth Circuit's ruling is *res judicata* on the legal theories advanced in Plaintiffs' Motion for Summary Judgment and the same should therefore be denied.

2.2     *Testimony needed which is relevant and material:* As part of the testimony in the *Guillermo Salinas, et al. v. City of Harlingen* trial, No. B-98-162, Defendant Ralph Moore testified that the MAK-90 assault rifle used by his son, Ernest Moore, to murder Plaintiff's family and injure Plaintiff Dan Morin was purchased by himself and that he did not include his son's name on the Form

4453 which is filed with the ATF authorities for the sale of an automatic gun because the ATF 4453 prohibits ownership of automatic weapons by persons who have been in mental institutions and persons who use illegal drugs. He testified that his son, Ernest Moore, the assailant in the tragedy which befell Plaintiffs' family, was a drug user and had been in a mental institution and therefore the Affidavit of Danny Carpenter, a former ATF Special Agent, the Affidavit of Joseph Vasquez and the Affidavit of Ralph Dwayne Moore, are disingenuous since all of the police witnesses in the Salinas trial (including Defendant Ralph Moore) testified that they knew that Ernest Moore could not own such a weapon as the MAK-90 assault rifle used to harm Plaintiffs in this case.

2.3     Moreover, in the trial of the Salinas case, Ralph Moore testified that he knew that his son, Ernest Moore, might have gone to "take care of the drug dealers in Rio Hondo" when he noticed that the AK-47 assault rifles were missing from the place where they were usually stored. Therefore, Defendant Moore (who is a police officer and whose actions were approved by the City of Harlingen) met the requirements of foreseeability, since he knew that the injuries to Plaintiff Dan Morin and the murder of his family members were both foreseeable and avoidable. Defendant Moore acted as a police officer instead of ignoring his duty to the citizens of Harlingen and to the Plaintiffs, this tragedy would have been avoided.

2.4     Moreover, at the trial, there was testimony of an alleged "cover up" based on the testimony of then police chief Jim Scheopner that the actions of Joseph Vasquez and Ralph Moore were approved by the City of Harlingen. Mr. Scheopner and these Defendants attempted to mislead the jury by claiming that Ralph Moore was a sharpshooter on a "SWAT" team and that the MAK-90 assault rifle was approved by the City of Harlingen for storage at his home as part of his duties in the course and scope as a police officer. The City's own policies at Section 4.04.01 and 4.04.02 require

the chief to approve the training and use of assault weapons by his officers and, in this case, Chief Scheopner has acknowledged that approval in the Salinas testimony, which is contrary to the allegations of Defendants in their summary judgment. Even more distressing, at the trial, Defendant Ralph Moore testified that he used the Harlingen police National Crime Institute computer ("NCIC") to access relevant address and phone number for Plaintiff Dan Morin and to provide that information to his son, Ernest Moore, because his son claimed that Dan Morin was a "drug dealer" in Rio Hondo and a "Mexican" who stole Ernest Moore's "Anglo" girlfriend. Combined with the Nazi paraphernalia in Ernest Moore's room and the participation by Defendant Ralph Moore and the City of Harlingen to make these assault rifles available to Ernest Moore, and his testimony in the Salinas trial that he cannot remember if he personally accessed the NCIC computer software or if it was another officer at the Harlingen Police Department who acted at his request, it is clear that the City is liable for negligence and negligent entrustment. Moreover, these actions constitute a Class-B misdemeanor offense in Texas, see Section 411.085(b) and Section 411.085(a)(1), Tex. Gov't Code, for the illegal use of the NCIC program. Further, Defendant Moore testified in the Salinas case that he used the Harlingen computer system on other occasions to locate Dan Morin and his family, and to use it to "investigate" Dan Morin based on the allegations made by his son, Ernest Moore.

2.5    *Substantial prejudice:* In particular, Plaintiffs' allegations against Defendants for negligence include not only the assault rifle used by Ernest Moore but the National Crime Institute computer program employed by the City of Harlingen and used by Ernest Moore, through his father Ralph D. Moore, and/or other police officers to obtain the physical address and name of Plaintiffs herein so that Ernest Moore could go and "take care of the drug dealers" that were dating his girlfriend, Julie Cox. Although not said by Defendants in their summary judgment, this is a case of rank

racism, coverup, and police conspiracy in order to keep the truth from emerging in this trial. Particularly, Ernest Moore was committed to mental hospitals according to Defendant Ralph Moore's testimony in the trial and, therefore, could not have owned a MAK-90 rifle, contrary to the affidavits of Vasquez, Moore, and others attached to Defendants' Motion for Summary Judgment. The ATF Form 4453 prohibits persons who have been treated in mental hospitals or who are drug addicts from owning such powerful, killing machines as a MAK-90 assault rifle and clearly by their own testimony, Defendants knew that Ernest Moore could not have qualified to own this weapon.

2.6    It is surprising, therefore, that Defendants have in sworn affidavits to this Court asserted Ernest Moore's ownership of the MAK-90 assault rifle which is directly contrary to their sworn testimony in the *Arturo Guillermo Salinas, et al. vs. City of Harlingen* trial, No. B-98-162, in which they admit their knowledge of Ernest Moore's drug addiction and mental hospital treatment and their knowledge that no ATF Form 4453 could ever be completed on this assault rifle. It is also contrary to their trail testimony where they alleged that Ralph D. Moore was in fact a sharpshooter on an imaginary SWAT team employed by the City of Harlingen and that they had full knowledge of these guns in the possession of Ralph D. Moore for City of Harlingen business purposes, and which were kept at his home with access open to Ernest Moore. These facts as reported in the newspaper accounts[1] and as will be verified by the records of the trial testimony and discovery addressed to the City of Harlingen and Ralph D. Moore[2] will establish the causes of action for state law negligence claims based on: (1) the assault rifle (MAK-90); (2) the NCIC computer software and programs employed by City of Harlingen officers including Ralph Moore, Defendant herein; and (3) the

_____

[1]See Affidavit of David K. Sergi attached hereto as Exhibit A.

[2]See Interrogatories and Requests for Production attached hereto as Exhibit B.

Harlingen computer system used by Ralph Moore to obtain the name and address of Plaintiff Dan Morin and his family so that he could send his revenge-crazed son to murder them with this assault rifle. The last time these facts came out, the City of Harlingen was slapped with a $35 million judgment and clearly the City of Harlingen would like for these facts not to come out in this case by preempting discovery in this lawsuit and forcing the Plaintiffs to respond in summary judgment when Defendants know that no discovery has occurred that would allow Plaintiffs to fully respond.

2.7    *Due diligence:* As set out above, Defendants' attempt to short circuit discovery in this case in the face of their damaging testimony given in the Salinas trial shows that their actions are disingenuous in filing this summary judgment prior to discovery being conducted in this case and prior to providing Plaintiffs an opportunity to obtain sworn testimony and evidence that directly contradicts Defendants' summary judgment proof.

2.8    *Good cause:* Good cause exists for this motion since, unless the same is granted, Plaintiffs will have no access to the same information currently available to Defendants in order to respond fully to the allegations. For example, the evidence of the MAK-90 assault rifle is new— having never been previously disclosed to Plaintiffs by Defendants.[3] In addition, by asserting these other grounds of negligence relating to the NCIC computer program and the Harlingen computer, it is clear that Defendants' summary judgment motion could not provide any relief for the City of Harlingen in any event and could only be a partial summary judgment even if the same were proved. To that end, Plaintiffs intend to file a Motion for Leave to Amend their Complaint in order to provide three sources of "use" or "misuse" of property under Section 101.021(2) Civ. Prac. & Remedies

---

[3]Even though Defendants had obligations under Rule 26 Fed. R. Civ. P., they failed to disclose this new evidence of a "second" assault rifle.

Code which waives the sovereign immunity of the City of Harlingen. In particular, the Leave to Amend will include as use or misuse allegations references to: (1) the MAK-90 assault rifle; (2) the use of the NCIC Harlingen Police Department computer software program to locate the address of Plaintiffs; (3) the use of the Harlingen computer system to locate Plaintiff and his family and delivery of that information to Ernest Moore.

      2.9     In addition, under separate cover, Plaintiffs have served Interrogatories and Requests for Production on Defendants. Following their written responses, Plaintiffs intend to depose Defendants in this case. It is likely that the evidence to be uncovered in discovery will include testimony and/or documents showing the City of Harlingen's involvement in providing the name and address of Plaintiff's families and giving that information to Ralph D. Moore with notice and knowledge of Moore's intent to distribute it to his son, Ernest Moore, for getting these "drug dealers in Rio Hondo" and in retaliation for Plaintiff Dan Morin allegedly taking the girlfriend of Ralph Moore's son, Ernest Moore. This information would preclude summary judgment and would be material since it would establish separate and independent grounds under §101.021(2) CPRC to waive sovereign immunity (in addition to the "use" of the rifle which is the sole subject of the summary judgment motion made by Defendants herein). In addition, Plaintiffs have no other method of obtaining information on the MAK-90 assault rifle that Defendants now allege was used in the shooting and therefore this Motion for Continuance is necessary in order to obtain the same.

      2.10    *Not for delay:* Plaintiffs bring this Motion not for purposes of delay but so that justice may be done. Defendants will not be harmed by the granting of this Motion for Summary Judgment since all of the knowledge of the facts relating to the use of the NCIC computer software and the use of the Harlingen Police Department computer in the commission of the crimes and torts against

Plaintiff and his family are fully known to Defendants herein and have been testified to in the *Salinas* trial described hereinabove. The fact that during that trial Defendants admitted that Defendant Moore violated §411.085(a)(1) Tex. Gov't Code prohibitions on using the NCIC computer for personal purposes and which ultimately resulted in the commission of a crime, and the fact that the City of Harlingen has done nothing to punish these individuals involved in that activity, including Defendant Moore and whoever the other officers assisting him in this illegal purpose, indicates that the City of Harlingen "approved" these actions and will use every method available to block the truth about these horrific events from ever reaching evidentiary stage in the trial of this case before this Court. Attached hereto is an affidavit from David K. Sergi, attorney for Plaintiffs, with various newspaper clippings from the trial which indicate the basis for this motion for a continuance and the need for additional discovery.

III.
### CERTIFICATE OF CONFERENCE

On the 11th day of February, 2003, the undersigned attorney contacted Mr. Tom Lockhart, attorney for Defendants, and he was opposed to this motion for continuance.

IV.
### CONCLUSION

Plaintiffs request that this Court enter the Scheduling Order described above and set the response to this Motion for Summary Judgment from Defendants for a date at least six months from today and allow discovery of the evidence needed to respond to the same.

Respectfully submitted,

SERGI & ASSOCIATES, P.L.L.C.
109 East Hopkins, Suite 200
San Marcos, Texas 78666
Telephone: (512) 392-5010/Fax: (512) 392-5042

BY: _____
David K. Sergi
Attorney for Plaintiffs
State Bar No. 18036000

Mr. Jerry J. Trevino
LAW OFFICES OF JERRY J. TREVINO
1125 South Port Avenue
Corpus Christi TX 78405
ATTORNEY FOR *Donald Morin, Diana Morin, Jennifer May Gwin, Danny Morin, Ruben Rios, Sr., as next friend of Ruben Rios, Jr., a minor, and Maria D. Lopez, as next friend of Brian Morin, a minor*, ALSO JOIN IN THIS MOTION FOR CONTINUANCE

## CERTIFICATE OF SERVICE

I certify that a true copy of the above was served on the following in accordance with the

Texas Rules of Civil Procedure on February 11, 2003.

Mr. Tom Lockhart
ADAMS & GRAHAM, L.L.P.
222 E. Van Buren, West Tower
P.O. Drawer 1429
Harlingen, TX 78551
*Attorneys for Appellees City of Harlingen,*
*Jim Scheopner, Joseph Vasquez and Ralph D. Moore*

Mr. Walter Passmore
PASSMORE, WALKER & TWENHAFEL, L.L.P.
P.O. Drawer 3766
McAllen, TX 78502-3766
*Attorney for Appellees Ralph D. Moore and*
*Jim Scheopner, individually*

Mr. Jerry Trevino
LAW OFFICES OF JERRY J. TREVINO
1125 South Port Avenue
Corpus Christi, TX 78405
*Attorneys for Donald Morin, Diana Morin,*
*Jennifer May Gwin, Danny Morin, Ruben Rios, Sr.,*
*as next friend of Ruben Rios, Jr., a minor, and*
*Maria D. Lopez, as next friend of Brian Morin, a minor*

DAVID K. SERGI

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DAN MORIN, Individually and as | § | |
| Representative of the Estate of | § | |
| Margarita Flores, Deceased | § | |
| Plaintiff-Appellant | § | |
| | § | |
| VS. | § | CAUSE NO. B-00-104 |
| | § | |
| THE CITY OF HARLINGEN, TEXAS | § | |
| Defendants-Appellees | § | |

### O R D E R

CAME ON TO BE HEARD this _____ day of _____, 2003, Plaintiff's Motion for

Continuance to Respond to Rule 56 Motion for Summary Judgment. The Court is of the opinion that

the same should be granted.

IT IS THEREFORE ORDERED that the following dates shall be entered as a Scheduling

Order:

_____    Date discovery ends

_____    Date for Plaintiffs' Response to Defendants' Motion for Summary Judgment

_____    Pretrial on all matters

_____    Trial date for jury trial


_____
UNITED STATES DISTRICT JUDGE

## EXHIBIT A

## AFFIDAVIT OF DAVID K. SERGI

STATE OF TEXAS            §

COUNTY OF HAYS            §

BEFORE ME, the undersigned authority, on this date personally appeared David K. Sergi, who being by me duly sworn, deposed and said as follows:

1.    "My name is David K. Sergi and I am attorney of record for the Plaintiffs in this case.

2.    I am over the age of 18 and competent to make this Affidavit.

3.    Attached to this Affidavit are a series of newspaper articles which report the trial testimony of Defendants in the *Salinas* case. All of the factual assertions herein are based on those public newspaper accounts.

4.    Also attached as Exhibit B are the Interrogatories and Requests for Production sent to Defendants. As can be seen from the discovery requests, information which is necessary to rebut the allegations in Defendants' Motion for Summary Judgment is solely in the possession of Defendants. If truthfully answered, this information will support granting leave to amend our complaint to include other "use" and "misuse" of property by the City. This information may also support a sanctions motion for filing affidavits claiming Ernest Moore was the owner of a MAK-90 assault rifle—when the *Salinas* trial testimony suggested otherwise."

EXHIBIT

A

FURTHER, AFFIANT sayeth not.

_____
DAVID K. SERGI

SUBSCRIBED AND SWORN to before me on this _17th_ day of February, 2003, by the said David

K. Sergi

VIKI LANKFORD
NOTARY PUBLIC
STATE OF TEXAS
EXPIRES
05-23-2005

_____
Notary Public

Valley Morning Star - News

wysiwyg://3/http://www.valleystar.com/files/n202221.



## NEWS

Full Site Index

E-mail t

CLASSIFIEDS

BUSINESS
DIRECTORY

AUTOFINDER

RGV REAL ESTATE
LOCATOR

"CAREER
CONNECTIONS"

ONLINE COUPONS

PAY YOUR
TRAFFIC TICKETS
ONLINE

SUBSCRIBE TO
VALLEY MORNING
STAR

NEWS

WORLD NEWS

SPORTS

BUSINESS

OPINION

RIOLIVING

TECHNOLOGY

HEALTH

OBITUARIES

CONTACT US

GUEST BOOK

TOWN HALL

ONLINE

Updated Friday, February 22, 2002 02:35:43 CST

### Ex-officer tells of cover-up

#### Deputy testifies he tried to expose handling of shooting

By FERNANDO DEL VALLE
Valley Morning Star

BROWNSVILLE — A former Harlingen police official testified Thursday that he was forced to resign after trying to expose a city cover-up of the handling of a police rifle a detective's son used in a shooting spree.

In a day of stirring testimony, a Cameron County sheriff's deputy also testified that he saw three men in the pickup truck he chased to the detective's home before a shootout that left U.S. Border Patrol agents Susan Lynn Rodriguez and Ricardo Guillermo Salinas dead and deputy Raul Rodriguez wounded.

In the third day of a trial that stems from a $20 million lawsuit, former Lt. Joe Rubio testified that former Police Chief Jim Scheopner lied to try to cover up th 1998 shootings in which detective R.D. Moore's son used an assault rifle that a citizen turned over to police for destruction.

Rubio testified Scheopner claimed the department assigned Moore the semiautomatic rifle because he was a sharpshooter on its SWAT team. But the department had no SWAT team, Rubio said.

"I believed the chief of police was involved in a cover-up," Rubio told jurors.

After Rubio took the allegations to a FBI agent, Capt. Joey Vasquez threatened complaining officers with being fired, Rubio testified.

When Rubio and other members of the Harlingen Police Officers Association told the media they wanted an investigation, the city retaliated against the union, Rubio said.

"No one wanted that investigation," he said.

Rubio testified that former Assistant City Manager Joe LaBeau went to the Cameron County District Attorney's Office with charges that the union had made illegal campaign contributions. Former Assistant Police Chief Robert Archer told then-union treasurer Eric Vasquez, Vasquez's son, to turn over the agency's checkbook to prosecutors, Rubio said.

In September 2000, a grand jury indicted the union on charges of making illegal campaign contributions to the 1998 campaigns of mayoral candidate Humberto Zamora and former Attorney General Jim Mattox.

Under the threat of personal indictment, he and former detective Dennis

ONLINE

RIOSUN

VALLEYSTAR
FORUM

RIO RUN NEWS

Under the threat of personal indictment, he and former detective Dennis Zamarron, another union official, resigned as part of a plea bargain agreement, Rubio testified.

Plaintiffs' attorney Sonia Lopez told jurors that state district judges select grand jury members. In Rubio's case, 197th State District Judge Migdalia Lopez chose members of the grand jury that indicted the police union, Lopez said.

In other testimony, Cameron County Sheriff's Deputy Roberto Rodriguez testified he saw three men in the pickup truck he chased to the San Benito home where R.D. Moore lived with his son.

"It was clear," he said. "I know there was a driver and two other people with him."

Outside the house, he saw R.D. Moore, who didn't know his son Ernest had just killed a mother and daughter in a shooting a spree at the Rio Hondo home of the man who his ex-girlfriend was living with.

"I think he's contemplating suicide," Rodriguez said R.D. Moore told him. "If not, he's going to come back and kill us or he's going to have you guys do it."

Then Rodriguez saw Ernest Moore open fire from a sunflower patch, he said.

After Rodriguez shot Moore, the father ran to his dying son, Rodriguez said.

"I saw R.D. put his weapon down and grab and cradle him and tell him, 'You damn fool, you damn fool, why'd you do this?'" Rodriguez said. "I told him I was sorry. He grabbed my shoulder and he said, 'I should have took care of him a long time ago.'"

As plaintiffs tried to build their case, a criminologist testified police policy violations led to the shootings.

"It was a clear and extremely serious violation of nationally accepted standards," George Kirkham, an author and retired Florida State University professor, said of policy violations that put the police-issued rifle into the hands of Ernest Moore.

"There was gross incompetence and indifference to safety consequences," said Kirkham, a consultant specializing in police shooting cases. "There's no legitimate reason for R.D. Moore to be given this weapon."

In a hearing before U.S. District Judge Hilda Tagle, Kirkham testified R.D. Moore unlawfully purchased an assault rifle for Ernest Moore.

About a month before the shootings, R.D. Moore bought a semiautomatic rifle after filing a federal form that requires the buyer to provide information such as whether the buyer has been committed to a mental institution or has used illegal drugs.

Wednesday, Lopez argued R.D. Moore had served as the gun's buyer because his son could not have lawfully purchased the weapon because he had been in a mental institution and had used illegal drugs.

E-ma

©2000, Valley Morning Star, a Freedom Communications, Inc. Company. All rights re

# Shooting events unravel

## Detective testifies he ran license check on victim

By FERNANDO DEL VALLE
Valley Morning Star

BROWNSVILLE — A Harlingen police detective testified Wednesday he ran license plate checks on the man his son later critically wounded in a shooting spree.

Detective R.D. Moore testified he ran license checks on Dan Morin's home for the first time, attorney Sonia Lopez told jurors in an attack that mortally wounded Morin's mother and sister.

The night before the July 1998 shootings, Ernest Moore called Morin's home for the first time, attorney Sonia Lopez told jurors the second day of a trial that stems from the biggest lawsuit filed against the city of Harlingen in recent history.

The same night, Ernest Moore called his parents' home to try to get a phone number, Lopez told jurors in the trial that claims a $20 million lawsuit that claims

**Please see TRIAL, Page A7**

## TRIAL / Shocking events unraveled at trial

Continued from Page A1

he used a police-issued rifle to kill U.S. Border Patrol agents Susan Lynn Rodriguez and Ricardo Guillermo Salinas and injure sheriff's Deputy Raul Rodriguez.

But J.D. Moore said the license-plate-checks turned up a north Harlingen address, while Morin lived in Rio Hondo. So he discarded the information, which he never gave his son, he said.

Ernest Moore "was upset at two drug dealers in Rio Hondo who turned his girlfriend on to cocaine," Lopez said, referring to Julie Lynn Cox, who left Moore for Morin about a week before the shootings.

In the small audience, Lisa Salinas, the mother of the slain

agent, quietly wept as Moore bluntly unraveled some of the events that led to the shootings.

As she grilled the veteran Harlingen police officer, Lopez questioned whether he "assisted ... in trying to locate Morin and his family."

"I ran the license plate check for my information only," Moore replied.

"Any information would have been turned over to the police department's drug task force," he said.

"I'm a police officer and if there's crimes being committed, that's what the system is for," Moore said of the law enforcement database he used to run license checks.

Using testimony from Moore and former Police Chief Jim Scheopner, plaintiff' attorney

ried to prove Moore failed to warn officers that his son had a rifle in a nearby cornfield before he opened fire.

Central to the plaintiff's case is the legal concept of assistance and danger. In their lawsuit, they charge Harlingen officials prompted circumstances that resulted in the officers' shootings.

Moore testified he warned some responding officers, but failed to alert others — producing the three victims of the ambush.

"At the time, I didn't realize the magnitude of the situation," Moore testified.

"My interpretation of disposal is not to throw away but to dispose of from one party to another," Moore said. In other words, it was to mean we could do whatever we wish.

For years, the police department did not destroy the assault rifle and instead, he took citizens turned over for destruction because the seized fire-

the rifle home, where he stored it in a gun vault in his son's room," he said.

Tuesday, Sylvia Pirtle testified she gave the rifle to the police-... department to be destroyed because she didn't want the stolen firearm amid a rash of neighborhood burglaries. She testified she requested the receipt that Moore signed and labeled, "for disposal."

"That was the word she used for disposal," she said.

During four hours on the witness stand, Scheopner testified he later before the shootings that police Capt. Joey Vasquez had assigned the rifle to Moore.

"Although he was not questioned about him, ... Spivey questioned Scheopner, testified Moore violated policy when he allowed his son to shoot the police-issued rifle.

quired a lengthy process that included obtaining a court order, Moore testified.

"We never intended to destroy either rifle," he said.

Although he agreed with a police consultant's findings that he and other officials violated some police policy, Moore later told jurors, "I don't believe we did do anything wrong."

During four hours on the witness stand, Scheopner testified he later before the shooting that police Capt. Joey Vasquez had assigned the rifle to Moore.

In making their case, plaintiffs relied on Cox earlier testimony that Ernest Moore presented the police-issued rifle.

But after about 15 minutes on the witness stand, Cox testified that she could not distinguish between the murder weapon and a privately owned assault rifle stored in the gun

tiffs have tried to show Scheopner, as the police department's policymaker, created a professional environment where policy violations led to the shootings.

Driving at a point critical to their case, plaintiffs continued to try to prove that Ernest Moore deliberately picked his father's police-issued rifle vault.

# Ex-officer tells of cover-up

## Witness says he tried to expose handling of the shooting

**By FERNANDO DEL VALLE**
Valley Morning Star

BROWNSVILLE — A former Harlingen police official testified Thursday that he was forced to resign after trying to expose a city cover-up of the handling of a police rifle a detective's son used in a shooting spree.

In a day of stirring testimony, a Cameron County sheriff's deputy also testified that he saw three men in the pickup truck she chased to the detective's home before a shootout that left U.S. Border Patrol agents Susan Lynn Rodriguez and Ricardo Guillermo Salinas dead and deputy Raul Rodriguez wounded.

In the third day of a trial that stems from a $30 million lawsuit, former Lt. Joe Rubio testified that former Police Chief Jim Scheopner lied to try to cover up the 1998 shootings in which detective R.D. Moore's son used an assault rifle that a citizen turned over to police for destruction.

Rubio testified Scheopner downplayed the department's suggested that Moore the semiautomatic rifle because he was a sharpshooter on its SWAT team. Moore said.

"I believed the chief of police was involved in a cover-up," Rubio told

futures.

After Rubio took the allegations to an FBI agent, Capt. Joey Vasquez threatened reprimanding officers with leaving Fred, Rubio testified.

When Rubio and other members of the Harlingen Police Officers Association ask the media they wanted an investigation, the city
**Please see TRIAL, Page A7**

---

## TRIAL / Ex-officer tells of cover-up at trial

**Continued from Page A1**

retaliated against the union, Rubio said.

"No one wanted that investigation," he said.

Rubio testified that former Assistant City Manager Joe LaBeau went to the Cameron County District Attorney's Office with charges that the union had made illegal campaign contributions. Former Assistant Police Chief Robert Archer told then-union treasurer Eric Vasquez, Joey Vasquez's son, to turn over the agency's checkbook to prosecutors, Rubio said.

In September 2000, a grand jury indicted the union on charges of making illegal campaign contributions to the 1998 campaigns of mayoral candi-

date Humberto Zamora and former Attorney General Jim Mattox.

Under the threat of personal indictment, Rubio and former detective Dennis Zamarron, another union official, resigned as part of a plea bargain agreement, Rubio testified.

Plaintiffs' attorney Sonia Lopez told jurors that state district judges select grand jury members. In Rubio's case, 197th State District Judge Migdalia Lopez chose members of the grand jury that indicted the police union. Lopez said.

In other testimony, Cameron County Sheriff's Deputy Roberto Rodriguez testified he saw three men in a pickup truck he chased to the San Pablo home where R.D. Moore lived with his son.

"It was clear," he said, "I know there was a driver and two other people with him."

Outside the house, he saw R.D. Moore, who didn't know his son Ernest had just killed a mother and daughter in a shooting spree at the Rio Hondo home of the man who his ex-girlfriend was living with.

"I think he's contemplating suicide," Rodriguez said R.D. Moore told him. "If not, he's going to come back and kill us or he's going to have you guys do it."

Then Rodriguez saw Ernest Moore open fire from a sunflower patch, he said.

After Rodriguez shot Moore, the father ran to his dying son, Rodriguez said.

"I saw R.D. put his weapon down and grab and cradle him and tell him, 'You damn fool, you damn fool, why'd you do this?' Rodriguez said. 'I told him I was sorry life grabbed my shoulder and he said, 'I should have took care of him a long time ago.'"

As plaintiffs tried to build their case, a criminologist testified police policy violations led to the shootings.

"It was a clear and extremely serious violation of nationally accepted standards," George Kirkham, an author and retired Florida State University professor, said of police violations that put the police-issued rifle into the hands of Ernest Moore.

"There was a gross incompetence and indifference to safety consequences," said Kirkham, a consultant specializ-

ing in police shooting cases. "There's no legitimate reason for R.D. Moore to be given this weapon.

In a hearing before U.S. District Judge Felix Recio, Kirkham testified R.D. Moore unlawfully purchased an assault rifle for Ernest Moore.

About a month before the shootings, R.D. Moore bought a semiautomatic rifle after filing a federal form that requires the buyer to provide information such as whether the buyer has been committed to a mental institution or has used illegal drugs.

Wednesday, Lopez argued R.D. Moore had served as the gun's buyer because his son could not have lawfully purchased the weapon because he had been in a mental institution and had used illegal drugs

Valley Mo... ...ws    wysiwyg://3/http://www.valleystar.com/files/n202201.1:



**Valley Morning Star**
www.valleystar.com

Online Edition

Full Site Index

NEWS

E-mail t

FEATURES

CLASSIFIEDS

BUSINESS
DIRECTORY

AUTOFINDER

RGV REAL ESTATE
LOCATOR

"CAREER
CONNECTIONS"

ONLINE COUPONS

PAY YOUR
TRAFFIC TICKETS
ONLINE

SUBSCRIBE TO
VALLEY MORNING
STAR

SECTIONS

NEWS

WORLD NEWS

SPORTS

BUSINESS

OPINION

RIOLIVING

TECHNOLOGY

HEALTH

OBITUARIES

CONTACT US

GUEST BOOK

TOWN HALL

ONLINE

Updated Wednesday, February 20, 2002 02:29:05 CST

## Trial focuses on rifle disposal

### Woman testifies 'I wanted to have these weapons destroyed'

By **FERNANDO DEL VALLE**
Valley Morning Star

BROWNSVILLE — A woman testified Tuesday that she requested the Harlingen Police Department give her a receipt to assure her that it would dispose of the assault rifle she turned over for destruction.

Sylvia Pirtle appeared shaken when a lawyer showed her the semiautomatic rifle that a detective's son used to kill two U.S. Border Patrol agents and injure a sheriff's deputy.

In the first day of the trial that stems from a $20 million lawsuit, lawyers representing the victims' families tried to show that Harlingen police officials' policy violations led Ernest Moore to use Pirtle's rifle to kill agents Susan Lynn Rodriguez and Ricardo Guillermo Salinas and injure sheriff's Deputy Raul Rodriguez.

"Since then, I've been in total shock," Pirtle told jurors in U.S. District Court. "It has affected me greatly."

On June 23, 1995, she turned over the rifle and a pistol to be destroyed because she feared the guns could be stolen amid a rash of neighborhood burglaries, Pirtle told jurors.

Documents show Pirtle turned over the guns to police Detective R.D. Moore, whose son would use the rifle in the 1998 shootings, said Broadus Spivey, the Austin attorney representing the slain agents' families.

"I told them I wanted to have these weapons destroyed," Pirtle said. "He gave m the impression, like 'OK,' but I said I wasn't leaving without a receipt."

But Harlingen police officials claim Pirtle turned over the weapon "for disposal, meaning for their disposal," Spivey argued.

"I went in to give the weapons to be destroyed," Pirtle insisted. "I believe I made myself clear, that I wanted them destroyed."

Hammering at a point critical to their case, plaintiff attorneys argued Ernest Moore used his father's police-issued rifle because practice had made it his preferred weapon for the shootings.

"A police detective practiced with his son so his son could be proficient with his Harlingen Police Department rifle," attorney Price Ainsworth told jurors. "This

02/20/2003 8:13

ONLINE

RIOSUN

VALLEYSTAR
FORUM

RIO RUN NEWS

Harlingen Police Department rifle," attorney Price Ainsworth told jurors. "This is the gun he would use against law enforcement officers because it was a police department weapon."

A rifle casing found in the back of Ernest Moore's pickup truck contained live rounds and spent cartridges for the murder weapon, Ainsworth claimed.

But Texas Ranger Rudy Jaramillo testified his investigation did not find the bullets in the gun casing. Instead, Department of Public Safety examiners likely found the bullets in the rifle when they inspected the gun, he said.

During nearly two hours of opening statements, plaintiff attorneys argued police officials' policy violations directly led to the shootings.

"It was part of the good old boy system, and along with working with each other they violated policy and procedure together without regard for us," said Sonia Lopez, the Edinburg attorney representing Raul Rodriguez.

Former Police Chief Jim Scheopner lied to try to cover up violations that led R.D. Moore to store the rifle in a gun vault in his son's room, attorneys argued.

Later, Scheopner would claim the department assigned Moore the rifle because he was a sharpshooter for its SWAT team, attorneys said.

"Upon pressure, they had to come up with a different story," Lopez said. "There was no SWAT team."

In about 15 minutes of opening arguments, attorney Tom Lockhart told jurors the trial "was not about R.D. Moore or Ernest Moore — he's dead."

"You're going to hear evidence that the Harlingen Police Department made mistakes — no question about that," said Lockhart, the city's insurance attorney.

"To prove the city of Harlingen is responsible, it has to be as a result of policy or custom," Lockhart said. "They must show that the city representatives placed these (victims) in this position of danger and stripped them of the ability to defend themselves. You've got to put aside your sympathies and decide this case on the evidence and the law."

Testimony continues at 8:30 a.m. today in U.S. District Judge Hilda Tagle's courtroom.

E-ma

©2000, Valley Morning Star, a Freedom Communications, Inc. Company. All rights res

This article appeared in the Valley Morning Star, the Rio Grande Valley's ne
Subscribe to Valley Morning Star.

Valley Morning Star - News     wysiwyg://5//http://www.valleystar.com/files/n202261.h



# Valley Morning Star

## www.valleystar.com

Online Edition

# NEWS

Full Site Index

E-mail t

**FEATURES**

**CLASSIFIEDS**

**BUSINESS DIRECTORY**

**AUTOFINDER**

**RGV REAL ESTATE LOCATOR**

**"CAREER CONNECTIONS"**

**ONLINE COUPONS**

**PAY YOUR TRAFFIC TICKETS ONLINE**

**SUBSCRIBE TO VALLEY MORNING STAR**

**SECTIONS**

**NEWS**

**WORLD NEWS**

**SPORTS**

**BUSINESS**

**OPINION**

**RIOLIVING**

**TECHNOLOGY**

**HEALTH**

**OBITUARIES**

**CONTACT US**

**GUEST BOOK**

**TOWN HALL**

**ONLINE**

Updated Monday, February 25, 2002 23:47:01 CST

## Jury deliberations continue

By LAURA B. MARTINEZ
Valley Morning Star

BROWNSVILLE — Jury deliberations will resume today in what's now a $45 million civil lawsuit filed against the city of Harlingen, claiming a police detective's son used a police issued assault rifle to kill two U.S. Border Patrol agents and injure a county deputy.

The jury deliberated for about 35 minutes Monday afternoon, following two hours of fervent closing arguments, before being told to return at 9 a.m. today.

In the lawsuit, the plaintiffs claim that Ernest Moore deliberately chose the department weapon issued to his father, police detective R.D. Moore, because Ernest Moore practiced with it prior to the July 1998 shootings.

Border Patrol agents Susan Lynn Rodriguez and Ricardo Guillermo Salinas wer killed in the shooting spree and Cameron County sheriff's Deputy Raul Rodriguez was wounded.

Susan Lynn Rodriguez became the first female Border Patrol agent killed in the line of duty.

To prove its state-created danger theory, the plaintiffs must show that the city of Harlingen's actions directly led to the deaths of Susan Lynn Rodriguez and Salinas and the injury of Raul Rodriguez.

The city claims there is no evidence the shootings would not have occurred — had Moore not chosen the police-issued rifle — because there were several other lethal weapons in the Moore home, city insurance attorney Tom Lockhart said.

The city also disputed claims that there was a cover-up during the investigation of the shootings.

In closing arguments Monday in U.S. District Court, Price Ainsworth, who is helping represent the families of Susan Lynn Rodriguez and Salinas, said that the state-created danger by the city was "deliberate indifference created with an arrogance demonstrated, time and time again."

Ainsworth said that the city still believes that "disposal doesn't mean disposal."

Citizen Sylvia Pirtle, who testified that she took the weapon to police to be destroyed, had turned over the assault rifle used to ambush the agents.

During the trial, the plaintiffs argued that mismanagement of the police department by former Police Chief Jim Scheopner allowed R.D. Moore's son

02/26/2003 7:03

wysiwyg://3/http://www.valleystar.com/files/n202261.h

ONLINE

RIOSUN

VALLEYSTAR
FORUM

RIO RUN NEWS

department by former Police Chief Jim Scheopner allowed R.D. Moore's son Ernest to transform the police-issued rifle into a murder weapon.

Plaintiff attorney Sonia Lopez said the problem was that the police department operated under the "good old boy" system and that there were no rules or policies.

She also said that none of the police officials involved in allowing the assault rifle to leave the department had been reprimanded.

"Why are these people still on the force?" Lopez asked.

Scheopner said the rifle had been issued to R.D. Moore because he was one of the department's sharpshooters, Lopez said.

However, testimony revealed that R.D. Moore had not trained with the weapon and that the only practice he had was shooting the gun in front of his home.

Lopez said that R.D. Moore had told lawmen arriving at his home on the morning of shootings that he knew his son had the AR-15 assault rifle and that its ammunition could penetrate any bulletproof vest.

"He (Ernest Moore) wanted to go down with full glory using a police gun agains police authorities," Lopez said.

Ainsworth said that R.D. Moore was more concerned about his dog than the agents who were outside with his enraged son.

"He treated the husbands and wives (of those injured) worse than he would treat a dog," Ainsworth said.

Lockhart said there was no cover-up by the city and the cover-up issue was planted like a "seed" by former Harlingen police officers Joe Rubio Jr. and Dennis Zamarron.

The "problem was a seed was planted and it grew," Lockhart said.

"If there had been a cover-up" don't you think "that Mr. John Brinning (a Border Patrol supervisor) of all people would get to the bottom of it?" Lockhart asked.

Brinning was Susan Lynn Rodriguez's supervisor.

Lockhart also said the agents were aware that Ernest Moore was near his father' home because an agent testified that Susan Lynn Rodriguez had told other agent "that the suspect could be as close as the cornfield."

Lockhart also said that during her testimony Julie Cox, Ernest Moore's ex-fiancee, never identified the police-issued weapon as the one Ernest Moore preferred.

"It didn't happen," Lockhart said referring to the cover-up. "There's no motivation… There was a fair investigation."

E-ma

©2000, Valley Morning Star, a Freedom Communications, Inc. Company. All rights res

This article appeared in the Valley Morning Star, the Rio Grande Valley's ne
Subscribe to Valley Morning Star.



# Valley Morning Star

## www.valleystar.com

Online Edition

Full Site Index          V

## NEWS

E-mail t

FEATURES

CLASSIFIEDS

BUSINESS
DIRECTORY

AUTOFINDER

RGV REAL ESTATE
LOCATOR

"CAREER
CONNECTIONS"

ONLINE COUPONS

PAY YOUR
TRAFFIC TICKETS
ONLINE

SUBSCRIBE TO
VALLEY MORNING
STAR

SECTIONS

NEWS

WORLD NEWS

SPORTS

BUSINESS

OPINION

RIOLIVING

TECHNOLOGY

HEALTH

OBITUARIES

CONTACT US

GUEST BOOK

TOWN HALL

ONLINE

Updated Thursday, February 28, 2002 01:00:00 CST

## No action against any officers

By LAURA B. MARTINEZ
Valley Morning Star

HARLINGEN — Although a federal jury ruled that the actions of some police officers violated the department's rules and procedures, which in turn contributed to the deaths of two U.S. Border Patrol agents and the wounding of sheriff's deputy, they will face no disciplinary action, officials said.

Families of the slain agents had repeatedly questioned why no disciplinary action had been taken against former Police Chief Jim Scheopner, Detective R.D. Moore and Capt. Joey Vasquez.

They claimed actions by the trio contributed to the deaths of Border Patrol agents Susan Lynn Rodriguez and Ricardo Guillermo Salinas and injury to Sheriff's Deputy Raul Rodriguez.

City Manager Roy Rodriguez said that Chapter 143 of the Texas' Civil Service rules states the city has up to 180 days after an incident occurs to discipline officers involved. After the 180 days have passed, no action can be taken.

"It (Chapter 143) doesn't allow me or anyone to discipline them for that," Roy Rodriguez said.

"If they go and do something today, that's a whole different story," he said. "But for that issue that happened in 1998, we do not have the power to do that."

During the trial, the plaintiffs argued that mismanagement of the police department allowed Ernest Moore to turn a police-issued rifle into a murder weapon.

Ernest Moore deliberately chose the weapon issued to his father because he had practiced with it prior to the July 1998 shootings, the plaintiffs contended.

A private citizen had turned over the semiautomatic assault rifle to the city in 1995 and asked that the weapon be destroyed.

Scheopner was chief of police at the time of the July 1998 shooting deaths.

During the trial, he said the rifle was issued to R.D. Moore because he was one of the department's sharpshooters.

However, testimony revealed that R.D. Moore had not trained with the weapon. The only practice he had was shooting the gun in front of his home.

Price Ainsworth, one of the attorneys representing the families of Ricardo



**ONLINE**

**RIOSUN**

**VALLEYSTAR FORUM**

**RIO RUN NEWS**

Price Ainsworth, one of the attorneys representing the families of Ricardo Salinas and Susan Rodriguez, said Tuesday that the next issue would be "to see those responsible are properly sanctioned."

Attorney Sonia Lopez, who represented deputy Raul Rodriguez, said that legally there is nothing that can be done. However, Civil Service rules should be looked into to see whether a pending investigation would allow for some type of action to be taken against the officers in question, she said.

"It just doesn't make any common sense that someone would be forced to keep someone," she said.

"It just doesn't seem logical to me that there would be such a deadline of a 180 days in order for someone to make such a decision as to whether to fire, discipline or reprimand someone."

E-ma

©2000, Valley Morning Star, a Freedom Communications, Inc. Company. All rights res

This article appeared in the Valley Morning Star, the Rio Grande Valley's ne

<u>Subscribe to Valley Morning Star.</u>

# Valley Morning Star

## www.valleystar.com

Online Edition

# NEWS

Full Site Index

E-mail t

FEATURES

**CLASSIFIEDS**

**BUSINESS DIRECTORY**

**AUTOFINDER**

**RGV REAL ESTATE LOCATOR**

**"CAREER CONNECTIONS"**

**ONLINE COUPONS**

**PAY YOUR TRAFFIC TICKETS ONLINE**

**SUBSCRIBE TO VALLEY MORNING STAR**

SECTIONS

**NEWS**

**WORLD NEWS**

**SPORTS**

**BUSINESS**

**OPINION**

**RIOLIVING**

**NEWS IN EDUCATION**

**OBITUARIES**

**CONTACT US**

**GUEST BOOK**

**TOWN HALL**

ONLINE

Updated Monday, April 15, 2002 02:16:32 CST

## Police delay legal action

### Detective could have broken federal laws when he bought gun

By LAURA B. MARTINEZ
Valley Morning Star

HARLINGEN — The police department is waiting for the U.S. Attorney's Office to issue a legal opinion on whether detective R.D. Moore violated federal laws when he purchased a MAC-90 assault rifle for his son before it concludes an internal investigation of the officer.

Police Chief Michael Blake called for an investigation about a month ago after Feb. 20 court testimony by R.D. Moore revealed that he purchased the weapon for his son, Ernest Moore.

The police department had sought assistance from the federal Bureau of Alcohol, Tobacco and Firearms in its investigation, Blake said.

"I need some information from them (federal authorities) that will help me finalize our portion of our investigation," Blake said Friday.

Federal authorities are trying to determine whether Moore violated federal gun laws when he purchased the weapon for his son.

Although there is no timetable as to when the legal opinion will be released, Blake said "I don't want this investigation hurried because of a perception...I want them to do the job right, just as I expect my personnel to do the job right and whatever time it takes for them to conclude that then I've got to let them proceed."

The police department is trying to determine whether Moore acted unlawfully when he bought the weapon.

R.D. Moore was testifying in a civil lawsuit filed against the city of Harlingen by the families of two slain U.S. Border Patrol agents and a wounded sheriff's deputy when he mentioned purchasing the weapon.

The lawsuit claimed that Ernest Moore used a police-issued assault rifle to kill agents Susan Lynn Rodriguez and Ricardo Guillermo Salinas, and injure Cameron County Deputy Raul Rodriguez on July 7, 1998.

Ernest Moore was killed that day in a shootout with other lawmen.

R.D. Moore testified that he had purchased the MAC-90 assault rifle for his son.

"I had given it— Ernest had bought that particular weapon with his money. I



"I had given it— Ernest had bought that particular weapon with his money. I purchased it for him," Moore said, according to court transcripts.

R.D. Moore testified that Ernest Moore did not fill out the ATF Form 4473 because he worked long hours and was only free on the weekends.

This particular transaction took place during the week, while he was working. He gave me the money to buy it, and I bought it for him," R.D. Moore testified.

Although it is not illegal to purchase a weapon for another individual, the receiver must pass certain federal guidelines.

Under ATF Form 4473, which is filled out when purchasing a weapon, a person cannot legally receive a firearm if he is an unlawful user or addicted to any controlled substance or has been adjudicated as a mental defective or has been committed to a mental institution.

"Based on the statutory requirements of someone involved in a purchase of a firearm, I asked them to review the acquisition of that weapon for legal compliance," Blake said in an earlier interview.

<u>E-ma</u>

©2000, Valley Morning Star, a Freedom Communications, Inc. Company. All rights res

This article appeared in the Valley Morning Star, the Rio Grande Valley's ne
<u>Subscribe to Valley Morning Star</u>.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

DAN MORIN, Individually and as      §
Representative of the Estate of      §
Margarita Flores, Deceased           §
    Plaintiff-Appellant          §
                                 §
VS.                                  §        CIVIL ACTION NO. B-00-104
                                 §
THE CITY OF HARLINGEN, TEXAS         §
    Defendants-Appellees         §

## PLAINTIFF'S FIRST INTERROGATORIES TO
## DEFENDANT CITY OF HARLINGEN

TO:   City of Harlingen, Defendant, by and through its attorney of record, Mr. Tom Lockhart, ADAMS & GRAHAM, L.L.P., 222 E. Van Buren, West Tower, P.O. Drawer 1429, Harlingen, TX 78551

    PLAINTIFFS, Dan Morin, Individually and as Representative of the Estate of Margarita Flores, Deceased ("Morin"), respectfully propounds the following written interrogatories to the City of Harlingen ("City"), Defendant, in the above-numbered cause, in accordance with Rules 26 and 33 of the Federal Rules of Civil Procedure. You are hereby requested to respond to these interrogatories in writing, under oath, within thirty-three (33) days of receipt of same. You must also supplement your answers pursuant to Rule 26(e) Federal Rules of Civil Procedure.

                        Respectfully submitted,

                        SERGI & ASSOCIATES, P.L.L.C.
                        109 East Hopkins, Suite 200
                        San Marcos, Texas 78666
                        Telephone: (512) 392-5010/Fax: (512) 392-5042



1

BY:     _____
        David K. Sergi
        Attorney for Plaintiffs
        State Bar No. 18036000

## CERTIFICATE OF SERVICE

I certify that a true copy of the above was served on the following in accordance with the

Texas Rules of Civil Procedure on February 10, 2003.

**VIA CMRRR 7002 2410 0007 0480 6971**
Mr. Tom Lockhart
ADAMS & GRAHAM, L.L.P.
222 E. Van Buren, West Tower
P.O. Drawer 1429
Harlingen, TX 78551
*Attorneys for Appellees City of Harlingen,*
*Jim Scheopner, Joseph Vasquez and Ralph D. Moore*

**VIA CMRRR 7002 2410 0007 0480 6957**
Mr. Walter Passmore
PASSMORE, WALKER & TWENHAFEL, L.L.P.
P.O. Drawer 3766
McAllen, TX 78502-3766
*Attorney for Appellees Ralph D. Moore and*
*Jim Scheopner, individually*

**VIA CMRRR 7002 2410 0007 0480 6964**
Mr. Jerry Trevino
LAW OFFICES OF JERRY J. TREVINO
1125 South Port Avenue
Corpus Christi, TX 78405
*Attorneys for Donald Morin, Diana Morin,*
*Jennifer May Gwin, Danny Morin, Ruben Rios, Sr.,*
*as next friend of Ruben Rios, Jr., a minor, and*
*Maria D. Lopez, as next friend of Brian Morin, a minor*

/s/
_____
DAVID K. SERGI

## DEFINITIONS APPLICABLE TO INTERROGATORIES

The following terms are defined and used in these Interrogatories as follows:

1.  "Plaintiff" means Dan Morin, Individually and as Representative of the Estate of Margarita Flores, Deceased.

2.  "Defendant" means the City of Harlingen, its representatives, employees, agents, or officers of Defendant acting or purporting to act on its behalf with respect to any matter inquired about in these Interrogatories.

3.  "You" or "your" means Defendant City of Harlingen, its attorneys, agents, representatives, or investigators.

4.  "Occurrences made the basis of this lawsuit" means the factual allegations set forth in Plaintiff's First Amended Complaint and any amendment thereto.

## INTERROGATORIES TO DEFENDANT

### INTERROGATORY NO. 1:

Identify by name, address, and telephone number any person you expect to testify at trial. This Interrogatory is requesting fact witnesses, experts and discoverable consulting experts.

*ANSWER:*

### INTERROGATORY NO. 2:

Identify any rule, regulation, policy, or procedure of the City of Harlingen relating to any alleged SWAT team or sharpshooters employed by the City at the time of the July 7, 1998 shooting incident which is the subject of this lawsuit.

*ANSWER:*

### INTERROGATORY NO. 3:

When did you first become aware of a MAK-90 rifle, from Interstate Arms, Norinco MAK-90 Sporter, serial #9339798, and who were you aware was the owner of said rifle.

*ANSWER:*

### INTERROGATORY NO. 4:

With respect to the MAK-90 rifle described in the previous Interrogatory, are you aware of any transfers of the same, and if so, please state the terms of the transfer, including sales price, name of seller and purchaser, and amount of consideration and source of consideration.

*ANSWER:*

### INTERROGATORY NO. 5:

Please state the policies of the City of Harlingen with respect to the use of the National Crime Institute Computer ("NCIC") and whether or not individual employees of the City of Harlingen may use the same for their personal benefit.

*ANSWER:*

**INTERROGATORY NO. 6:**
Please state the policies of the City of Harlingen regarding the use of the City of Harlingen computers for tracing individuals for personal benefit of City of Harlingen employees.

*ANSWER:*


**INTERROGATORY NO. 7:**
Identify the requirements for owning and purchasing a MAK-90 semi-automatic rifle that you contend was used in the shooting of the Plaintiffs in this case.

*ANSWER:*


**INTERROGATORY NO. 8:**
State whether or not Ernest Moore was qualified by virtue of his prior drug treatment and mental health treatment to own the MAK-90 rifle which you contend was used in the shooting of Plaintiffs in this case.

*ANSWER:*


**INTERROGATORY NO. 9:**
Identify all investigations of the July 7, 1998 incident and July 8, 1998 incident which involved Ernest Moore and any of the occurrences which are the subject of this lawsuit.

*ANSWER:*


**INTERROGATORY NO. 10:**
Please describe your knowledge of who owned the MAK-90 rifle which you contend was used in the shooting of the Plaintiffs in this case and how that rifle was acquired by the owner at the time of the shooting or at any time prior to the shooting.

*ANSWER:*

**INTERROGATORY NO. 11:**
Please state the complete factual and legal basis for each affirmative defense asserted by you in your answer in this case.

*ANSWER:*

**INTERROGATORY NO. 12:**
Identify by name, address and telephone number every person known or believed by you to have knowledge or any fact relevant to this lawsuit, stating in detail for each such person the knowledge you know or believe that person to have.

*ANSWER:*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

DAN MORIN, Individually and as      §
Representative of the Estate of     §
Margarita Flores, Deceased          §
     Plaintiff-Appellant           §
                                    §
VS.                                 §     CIVIL ACTION NO. B-00-104
                                    §
THE CITY OF HARLINGEN, TEXAS        §
     Defendants-Appellees          §

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO DEFENDANT CITY OF HARLINGEN

TO:  City of Harlingen, Defendant, by and through its attorney of record, Mr. Tom Lockhart, ADAMS & GRAHAM, L.L.P., 222 E. Van Buren, West Tower, P.O. Drawer 1429, Harlingen, TX 78551

     PLAINTIFFS, Dan Morin, Individually and as Representative of the Estate of Margarita Flores, Deceased, respectfully serves the following First Request for Production, pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure. You are hereby requested to respond to these requests in writing, under oath, and to produce copies of the requested documents to the office of the undersigned defense counsel within thirty three (33) days of receipt of these requests.

     Respectfully submitted,

     SERGI & ASSOCIATES, P.L.L.C.
     109 East Hopkins, Suite 200
     San Marcos, Texas 78666
     Telephone: (512) 392-5010/Fax: (512) 392-5042

BY:     /s/
     David K. Sergi
     Attorney for Plaintiffs
     State Bar No. 18036000

## CERTIFICATE OF SERVICE

I certify that a true copy of the above was served on the following in accordance with the

Texas Rules of Civil Procedure on February 10, 2003.

**VIA CMRRR 7002 2410 0007 0480 6971**
Mr. Tom Lockhart
ADAMS & GRAHAM, L.L.P.
222 E. Van Buren, West Tower
P.O. Drawer 1429
Harlingen, TX 78551
*Attorneys for Appellees City of Harlingen,*
*Jim Scheopner, Joseph Vasquez and Ralph D. Moore*

**VIA CMRRR 7002 2410 0007 0480 6957**
Mr. Walter Passmore
PASSMORE, WALKER & TWENHAFEL, L.L.P.
P.O. Drawer 3766
McAllen, TX 78502-3766
*Attorney for Appellees Ralph D. Moore and*
*Jim Scheopner, individually*

**VIA CMRRR 7002 2410 0007 0480 6964**
Mr. Jerry Trevino
LAW OFFICES OF JERRY J. TREVINO
1125 South Port Avenue
Corpus Christi, TX 78405
*Attorneys for Donald Morin, Diana Morin,*
*Jennifer May Gwin, Danny Morin, Ruben Rios, Sr.,*
*as next friend of Ruben Rios, Jr., a minor, and*
*Maria D. Lopez, as next friend of Brian Morin, a minor*

/S/
_____
DAVID K. SERGI

## DEFINITIONS APPLICABLE TO REQUEST FOR PRODUCTION

The following terms are defined and used in these Requests for Production as follows:

1.    "Plaintiff" means Dan Morin, Individually and as Representative of the Estate of Margarita Flores, Deceased.

2.    "Defendant" means the City of Harlingen, its representatives, employees, agents, or officers of Defendant acting or purporting to act on its behalf with respect to any matter inquired about in these Interrogatories.

3.    "You" or "your" means Defendant City of Harlingen, its attorneys, agents, representatives, or investigators.

4.    "Occurrences made the basis of this lawsuit" means the factual allegations set forth in Plaintiff's First Amended Complaint and any amendment thereto.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**
    Please produce all documents and tangible things, including all tangible reports, physical models, compilations of data, notes, documents, working papers, correspondence, billing time, records, and other material reviewed by, or prepared by, any expert and/or consulting expert retained by you, including materials that you or your attorney have provided to each expert witness that you expect to call as a witness or whose mental impressions and opinions have been reviewed by a testifying expert in this case.

    *RESPONSE:*

**REQUEST FOR PRODUCTION NO. 2:**
    Please produce all documents which you have identified and/or used in preparing your responses to any written interrogatories served on you by Plaintiffs.

    *RESPONSE:*

**REQUEST FOR PRODUCTION NO. 3:**
    Please produce copies of all documents containing information which supports any alleged affirmative defense that you will assert in this litigation.

    *RESPONSE:*

**REQUEST FOR PRODUCTION NO. 4:**
    Please produce all witness statements relating to the occurrences made the basis of this lawsuit.

    *RESPONSE:*

**REQUEST FOR PRODUCTION NO. 5:**
    Please produce all documents identified in your Initial Disclosures or used to prepare your Initial Disclosures.

***RESPONSE:***


## REQUEST FOR PRODUCTION NO. 6:

Please produce all documents that contain information concerning the name, address and telephone number of any potential or correct parties to this litigation if you contend that you were served in an incorrect capacity in this litigation.

***RESPONSE:***


## REQUEST FOR PRODUCTION NO. 7:

Please produce all indemnity and insurance agreements under which any person or entity may be liable to satisfy part or all of a judgment rendered in this lawsuit, or to indemnify or reimburse for any payments made on any judgment in this lawsuit.

***RESPONSE:***


## REQUEST FOR PRODUCTION NO. 8:

Please produce all documents relating to the job performance of Jim Scheopner, Ralph D. Moore and Joseph Vasquez during the past 10 years, including, but not limited to, evaluations, performance appraisals, counseling sessions, oral or written warnings and/or disciplinary notices.

***RESPONSE:***


## REQUEST FOR PRODUCTION NO. 9:

Please produce all documents relating to the employment and compensation of Jim Scheopner, Ralph D. Moore and Joseph Vasquez, including documents showing their job title, job status, rate of pay, paystubs and vouchers, descriptions of jobs held or work performed, employee handbooks and benefit statements, insurance payments and benefits, health insurance benefits and payments, retirement, stock transfers or other benefits or compensation in any form to be paid by you or which has been paid by you to them and all documents showing their income and benefits from any source available to you during the past 10 years.

*RESPONSE:*

**REQUEST FOR PRODUCTION NO. 10:**
> Please produce all documents that show or evidence any lawsuits, arbitrations, or other adversary proceedings or administrative proceedings with any of your employees or former employees in which you have been a party during the last 5 years.

*RESPONSE:*

**REQUEST FOR PRODUCTION NO. 11:**
> Please produce all documents that you have supplied to any person whom you or your attorney may call as a fact witness during the trial of this lawsuit.

*RESPONSE:*

**REQUEST FOR PRODUCTION NO. 12:**
> Please produce a complete copy of the following individuals personnel files:
> A.    Jim Scheopner
> B.    Ralph D. Moore
> C.    Joseph Vasquez

*RESPONSE:*

**REQUEST FOR PRODUCTION NO. 13:**
> Please produce all complaints or documentation of complaints that you have received at any point in time regarding Jim Scheopner, Ralph D. Moore and Joseph Vasquez.

*RESPONSE:*

**REQUEST FOR PRODUCTION NO. 14:**
> Please produce all exhibits which will be used as demonstrative evidence or which will be submitted or offered into evidence during the trial of this action.

*RESPONSE:*

**REQUEST FOR PRODUCTION NO. 15:**

     Please produce a copy of your e-mail and word processing document retention policies that have been in effect from January 1, 1995 to date.

*RESPONSE:*

**REQUEST FOR PRODUCTION NO. 16:**

     Please produce all documents that establish the manner in which you backed up or archived e-mail and word processing files since January 1, 1995 and the manner in which, and location in which, such archives were or are currently maintained.

*RESPONSE:*

**REQUEST FOR PRODUCTION NO. 17:**

     Please produce all personnel handbooks and all documents reflecting the personnel practices and policies for the City of Harlingen in effect from January 1, 1995 until present.

*RESPONSE:*

**REQUEST FOR PRODUCTION NO. 18:**

     Please produce all documents reflecting your procedures and criteria for assigning, training, assisting, handling the complaints of, evaluating, promoting, increasing salary, demoting, disciplining, laying off and discharging of your employees since January 1, 1995 to date.

*RESPONSE:*

**REQUEST FOR PRODUCTION NO. 19:**

     Please produce all documents which reflect, refer, evidence, relate or describe in any manner any defense upon which you may rely in the defense of this suit.

*RESPONSE:*


**REQUEST FOR PRODUCTION NO. 20:**
Please produce all documents relating to or evidencing the job description, employment duties, and standards of performance for Jim Scheopner, Ralph D. Moore and Joseph Vasquez.

*RESPONSE:*


**REQUEST FOR PRODUCTION NO. 21:**
Please produce all documents reflecting communications made to Defendants' employees in connection with inquiries relating to or pertaining to Plaintiffs' complaints in this lawsuit.

*RESPONSE:*


**REQUEST FOR PRODUCTION NO. 22:**
Please produce all photographs, videotapes, charts, computer records or diagrams relating to any issue in this lawsuit.

*RESPONSE:*


**REQUEST FOR PRODUCTION NO. 23:**
Please produce all correspondence between Plaintiffs and you.

*RESPONSE:*


**REQUEST FOR PRODUCTION NO. 24:**
Please produce the original tape and/or other mechanical recording devices used by you to record any conversations with Plaintiffs during the past 5 years.

*RESPONSE:*

**REQUEST FOR PRODUCTION NO. 25:**

Please produce any reports about this lawsuit and/or claims subject to this litigation made by you to your City Council and/or insurance adjusters or carriers, including Texas Municipal League.

***RESPONSE:***


**REQUEST FOR PRODUCTION NO. 26:**

Please produce all billing statements or fee records of your attorneys in connection with the defense of this litigation.

***RESPONSE:***


**REQUEST FOR PRODUCTION NO. 27:**

All trial exhibits used in the *Arturo Guillermo Salinas, et al. vs. City of Harlingen* case, B-98-162 by either Plaintiff or Defendants.

***RESPONSE:***


**REQUEST FOR PRODUCTION NO. 28:**

All trial transcripts used in the *Arturo Guillermo Salinas, et al. vs. City of Harlingen* case, B-98-162.

***RESPONSE:***


**REQUEST FOR PRODUCTION NO. 29:**

All correspondence between any representatives of the City of Harlingen and any representatives of the Plaintiff in *Arturo Guillermo Salinas, et al. vs. City of Harlingen* since February 2002.

***RESPONSE:***

**REQUEST FOR PRODUCTION NO. 30:**
   All files or other documents containing information on Ernest Moore and relating to the shooting incident on July 7, 1998.

   ***RESPONSE:***


**REQUEST FOR PRODUCTION NO. 31:**
   All criminal records of Ernest Moore.

   ***RESPONSE:***


**REQUEST FOR PRODUCTION NO. 32:**
   All records of disciplinary action taken against Ralph Dwayne Moore, Jim Schoepner, and Joe Vasquez during the past twenty (20) years.

   ***RESPONSE:***


**REQUEST FOR PRODUCTION NO. 33:**
   All criminal and other files on Julie Cox, who was involved in the Ernest Moore investigation.

   ***RESPONSE:***


**REQUEST FOR PRODUCTION NO. 34:**
   All files or documents on the MAK-90 rifle that you contend was used in the shooting of Plaintiffs.

   ***RESPONSE:***


**REQUEST FOR PRODUCTION NO. 35:**
   All files or documents you have on Danny Carpenter and any investigation by him.

*RESPONSE:*


**REQUEST FOR PRODUCTION NO. 36:**
All investigations of the shooting of July 7, 1998.

*RESPONSE:*


**REQUEST FOR PRODUCTION NO. 37:**
All records of training received by Ralph D. Moore in the use of weapons during the past twenty (20) years.

*RESPONSE:*


**REQUEST FOR PRODUCTION NO. 38:**
All policies for training in the use of assault or automatic weapons by the Harlingen Police Department employed during the last 20 years.

*RESPONSE:*


**REQUEST FOR PRODUCTION NO. 39:**
All policies regarding an alleged "SWAT team" which exists at the City of Harlingen or that would suggest Ralph D. Moore was a sharpshooter on such a SWAT team.

*RESPONSE:*


**REQUEST FOR PRODUCTION NO. 40:**
All incident reports of all officers relating to the July 7, 1998 shootings.

*RESPONSE:*

**REQUEST FOR PRODUCTION NO. 41:**

All investigations commenced by former Police Chief Michael Blake regarding the MAK-90 assault rifle.

***RESPONSE:***

**REQUEST FOR PRODUCTION NO. 42:**

All ATF Form 4473's that relate to the MAK-90 assault rifle.

***RESPONSE:***

**REQUEST FOR PRODUCTION NO. 43:**

All policies of the City of Harlingen regarding registration of weapons under ATF Form 4473, both for police officers and private citizens.

***RESPONSE:***

**REQUEST FOR PRODUCTION NO. 44:**

All records from R.D. Moore or any other police officers regarding Ernest Moore and his drug and mental health problems.

***RESPONSE:***

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

DAN MORIN, Individually and as   §
Representative of the Estate of   §
Margarita Flores, Deceased   §
      Plaintiff-Appellant   §
    §
VS.   §       CIVIL ACTION NO. B-00-104
    §
THE CITY OF HARLINGEN, TEXAS   §
    Defendants-Appellees   §

## PLAINTIFF'S FIRST INTERROGATORIES TO
## DEFENDANT RALPH D. MOORE

**TO:**  Ralph D. Moore, Defendant, by and through its attorney of record, Walter Passmore, PASSMORE, WALKER & TWENHAFEL, L.L.P., P.O. Drawer 3766, McAllen TX 78502-3766

PLAINTIFFS, Dan Morin, Individually and as Representative of the Estate of Margarita Flores, Deceased ("Morin"), respectfully propounds the following written interrogatories to the City of Harlingen ("City"), Defendant, in the above-numbered cause, in accordance with Rules 26 and 33 of the Federal Rules of Civil Procedure. You are hereby requested to respond to these interrogatories in writing, under oath, within thirty-three (33) days of receipt of same. You must also supplement your answers pursuant to Rule 26(e) Federal Rules of Civil Procedure.

Respectfully submitted,

SERGI & ASSOCIATES, P.L.L.C.
109 East Hopkins, Suite 200
San Marcos, Texas 78666
Telephone: (512) 392-5010/Fax: (512) 392-5042

BY:  _____

David K. Sergi
Attorney for Plaintiffs
State Bar No. 18036000

## CERTIFICATE OF SERVICE

I certify that a true copy of the above was served on the following in accordance with the

Texas Rules of Civil Procedure on February 10, 2003.

**VIA CMRRR 7002 2410 0007 0480 6971**
Mr. Tom Lockhart
ADAMS & GRAHAM, L.L.P.
222 E. Van Buren, West Tower
P.O. Drawer 1429
Harlingen, TX 78551
*Attorneys for Appellees City of Harlingen,*
*Jim Scheopner, Joseph Vasquez and Ralph D. Moore*

**VIA CMRRR 7002 2410 0007 0480 6957**
Mr. Walter Passmore
PASSMORE, WALKER & TWENHAFEL, L.L.P.
P.O. Drawer 3766
McAllen, TX 78502-3766
*Attorney for Appellees Ralph D. Moore and*
*Jim Scheopner, individually*

**VIA CMRRR 7002 2410 0007 0480 6964**
Mr. Jerry Trevino
LAW OFFICES OF JERRY J. TREVINO
1125 South Port Avenue
Corpus Christi, TX 78405
*Attorneys for Donald Morin, Diana Morin,*
*Jennifer May Gwin, Danny Morin, Ruben Rios, Sr.,*
*as next friend of Ruben Rios, Jr., a minor, and*
*Maria D. Lopez, as next friend of Brian Morin, a minor*

_____
DAVID K. SERGI

## DEFINITIONS APPLICABLE TO INTERROGATORIES

The following terms are defined and used in these Interrogatories as follows:

1.  "Plaintiff" means Dan Morin, Individually and as Representative of the Estate of Margarita Flores, Deceased.

2.  "Defendant" means the City of Harlingen, its representatives, employees, agents, or officers of Defendant acting or purporting to act on its behalf with respect to any matter inquired about in these Interrogatories.

3.  "You" or "your" means Defendant City of Harlingen, its attorneys, agents, representatives, or investigators.

4.  "Occurrences made the basis of this lawsuit" means the factual allegations set forth in Plaintiff's First Amended Complaint and any amendment thereto.

## INTERROGATORIES TO DEFENDANT

**INTERROGATORY NO. 1:**

Identify by name, address, and telephone number any person you expect to testify at trial. This Interrogatory is requesting fact witnesses, experts and discoverable consulting experts.

*ANSWER:*

**INTERROGATORY NO. 2:**

Identify any rule, regulation, policy, or procedure of the City of Harlingen relating to any alleged SWAT team or sharpshooters employed by the City at the time of the July 7, 1998 shooting incident which is the subject of this lawsuit.

*ANSWER:*

**INTERROGATORY NO. 3:**

When did you first become aware of a MAK-90 rifle, from Interstate Arms, Norinco MAK-90 Sporter, serial #9339798, and who were you aware was the owner of said rifle.

*ANSWER:*

**INTERROGATORY NO. 4:**

With respect to the MAK-90 rifle described in the previous Interrogatory, are you aware of any transfers of the same, and if so, please state the terms of the transfer, including sales price, name of seller and purchaser, and amount of consideration and source of consideration.

*ANSWER:*

**INTERROGATORY NO. 5:**

Please state the policies of the City of Harlingen with respect to the use of the National Crime Institute Computer ("NCIC") and whether or not individual employees of the City of Harlingen may use the same for their personal benefit.

*ANSWER:*

**INTERROGATORY NO. 6:**
     Please state the policies of the City of Harlingen regarding the use of the City of Harlingen computers for tracing individuals for personal benefit of City of Harlingen employees.

     *ANSWER:*


**INTERROGATORY NO. 7:**
     Identify the requirements for owning and purchasing a MAK-90 semi-automatic rifle that you contend was used in the shooting of the Plaintiffs in this case.

     *ANSWER:*


**INTERROGATORY NO. 8:**
     State whether or not Ernest Moore was qualified by virtue of his prior drug treatment and mental health treatment to own the MAK-90 rifle which you contend was used in the shooting of Plaintiffs in this case.

     *ANSWER:*


**INTERROGATORY NO. 9:**
     Identify all investigations of the July 7, 1998 incident and July 8, 1998 incident which involved Ernest Moore and any of the occurrences which are the subject of this lawsuit.

     *ANSWER:*


**INTERROGATORY NO. 10:**
     Please describe your knowledge of who owned the MAK-90 rifle which you contend was used in the shooting of the Plaintiffs in this case and how that rifle was acquired by the owner at the time of the shooting or at any time prior to the shooting.

     *ANSWER:*

### INTERROGATORY NO. 11:

Please state the complete factual and legal basis for each affirmative defense asserted by you in your answer in this case.

*ANSWER:*

### INTERROGATORY NO. 12:

Identify by name, address and telephone number every person known or believed by you to have knowledge or any fact relevant to this lawsuit, stating in detail for each such person the knowledge you know or believe that person to have.

*ANSWER:*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

DAN MORIN, Individually and as § 
Representative of the Estate of § 
Margarita Flores, Deceased § 
    Plaintiff-Appellant § 
     § 
VS. §     CIVIL ACTION NO. B-00-104
     § 
THE CITY OF HARLINGEN, TEXAS § 
    Defendants-Appellees § 

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO
## DEFENDANT CITY OF HARLINGEN

**TO:**   Ralph D. Moore, Defendant, by and through its attorney of record, Walter Passmore,
PASSMORE, WALKER & TWENHAFEL, L.L.P., P.O. Drawer 3766, McAllen TX
78502-3766

    PLAINTIFFS, Dan Morin, Individually and as Representative of the Estate of Margarita

Flores, Deceased, respectfully serves the following First Request for Production, pursuant to Rules

26 and 34 of the Federal Rules of Civil Procedure. You are hereby requested to respond to these

requests in writing, under oath, and to produce copies of the requested documents to the office of the

undersigned defense counsel within thirty three (33) days of receipt of these requests.

                      Respectfully submitted,

                      SERGI & ASSOCIATES, P.L.L.C.
                      109 East Hopkins, Suite 200
                      San Marcos, Texas 78666
                      Telephone: (512) 392-5010/Fax: (512) 392-5042

**BY:**         /S/
                     David K. Sergi
                     Attorney for Plaintiffs
                     State Bar No. 18036000

## CERTIFICATE OF SERVICE

I certify that a true copy of the above was served on the following in accordance with the

Texas Rules of Civil Procedure on February 10, 2003.

**VIA CMRRR 7002 2410 0007 0480 6971**
Mr. Tom Lockhart
ADAMS & GRAHAM, L.L.P.
222 E. Van Buren, West Tower
P.O. Drawer 1429
Harlingen, TX 78551
*Attorneys for Appellees City of Harlingen,*
*Jim Scheopner, Joseph Vasquez and Ralph D. Moore*

**VIA CMRRR 7002 2410 0007 0480 6957**
Mr. Walter Passmore
PASSMORE, WALKER & TWENHAFEL, L.L.P.
P.O. Drawer 3766
McAllen, TX 78502-3766
*Attorney for Appellees Ralph D. Moore and*
*Jim Scheopner, individually*

**VIA CMRRR 7002 2410 0007 0480 6964**
Mr. Jerry Trevino
LAW OFFICES OF JERRY J. TREVINO
1125 South Port Avenue
Corpus Christi, TX 78405
*Attorneys for Donald Morin, Diana Morin,*
*Jennifer May Gwin, Danny Morin, Ruben Rios, Sr.,*
*as next friend of Ruben Rios, Jr., a minor, and*
*Maria D. Lopez, as next friend of Brian Morin, a minor*

/s/
_____
DAVID K. SERGI

## DEFINITIONS APPLICABLE TO REQUEST FOR PRODUCTION

The following terms are defined and used in these Requests for Production as follows:

1.  "Plaintiff" means Dan Morin, Individually and as Representative of the Estate of Margarita Flores, Deceased.

2.  "Defendant" means the City of Harlingen, its representatives, employees, agents, or officers of Defendant acting or purporting to act on its behalf with respect to any matter inquired about in these Interrogatories.

3.  "You" or "your" means Defendant City of Harlingen, its attorneys, agents, representatives, or investigators.

4.  "Occurrences made the basis of this lawsuit" means the factual allegations set forth in Plaintiff's First Amended Complaint and any amendment thereto.

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1:

Please produce all documents and tangible things, including all tangible reports, physical models, compilations of data, notes, documents, working papers, correspondence, billing time, records, and other material reviewed by, or prepared by, any expert and/or consulting expert retained by you, including materials that you or your attorney have provided to each expert witness that you expect to call as a witness or whose mental impressions and opinions have been reviewed by a testifying expert in this case.

*RESPONSE:*

### REQUEST FOR PRODUCTION NO. 2:

Please produce all documents which you have identified and/or used in preparing your responses to any written interrogatories served on you by Plaintiffs.

*RESPONSE:*

### REQUEST FOR PRODUCTION NO. 3:

Please produce copies of all documents containing information which supports any alleged affirmative defense that you will assert in this litigation.

*RESPONSE:*

### REQUEST FOR PRODUCTION NO. 4:

Please produce all witness statements relating to the occurrences made the basis of this lawsuit.

*RESPONSE:*

### REQUEST FOR PRODUCTION NO. 5:

Please produce all documents identified in your Initial Disclosures or used to prepare your Initial Disclosures.

*RESPONSE:*


## REQUEST FOR PRODUCTION NO. 6:

Please produce all documents that contain information concerning the name, address and telephone number of any potential or correct parties to this litigation if you contend that you were served in an incorrect capacity in this litigation.

*RESPONSE:*


## REQUEST FOR PRODUCTION NO. 7:

Please produce all indemnity and insurance agreements under which any person or entity may be liable to satisfy part or all of a judgment rendered in this lawsuit, or to indemnify or reimburse for any payments made on any judgment in this lawsuit.

*RESPONSE:*


## REQUEST FOR PRODUCTION NO. 8:

Please produce all documents relating to the job performance of Jim Scheopner, Ralph D. Moore and Joseph Vasquez during the past 10 years, including, but not limited to, evaluations, performance appraisals, counseling sessions, oral or written warnings and/or disciplinary notices.

*RESPONSE:*

## REQUEST FOR PRODUCTION NO. 9:

Please produce all documents relating to the employment and compensation of Jim Scheopner, Ralph D. Moore and Joseph Vasquez, including documents showing their job title, job status, rate of pay, paystubs and vouchers, descriptions of jobs held or work performed, employee handbooks and benefit statements, insurance payments and benefits, health insurance benefits and payments, retirement, stock transfers or other benefits or compensation in any form to be paid by you or which has been paid by you to them and all documents showing their income and benefits from any source available to you during the past 10 years.

*RESPONSE:*


**REQUEST FOR PRODUCTION NO. 10:**
Please produce all documents that show or evidence any lawsuits, arbitrations, or other adversary proceedings or administrative proceedings with any of your employees or former employees in which you have been a party during the last 5 years.

*RESPONSE:*


**REQUEST FOR PRODUCTION NO. 11:**
Please produce all documents that you have supplied to any person whom you or your attorney may call as a fact witness during the trial of this lawsuit.

*RESPONSE:*


**REQUEST FOR PRODUCTION NO. 12:**
Please produce a complete copy of the following individuals personnel files:
- A.    Jim Scheopner
- B.    Ralph D. Moore
- C.    Joseph Vasquez

*RESPONSE:*


**REQUEST FOR PRODUCTION NO. 13:**
Please produce all complaints or documentation of complaints that you have received at any point in time regarding Jim Scheopner, Ralph D. Moore and Joseph Vasquez.

*RESPONSE:*


**REQUEST FOR PRODUCTION NO. 14:**
Please produce all exhibits which will be used as demonstrative evidence or which will be submitted or offered into evidence during the trial of this action.

*RESPONSE:*


**REQUEST FOR PRODUCTION NO. 15:**
Please produce a copy of your e-mail and word processing document retention policies that have been in effect from January 1, 1995 to date.

*RESPONSE:*


**REQUEST FOR PRODUCTION NO. 16:**
Please produce all documents that establish the manner in which you backed up or archived e-mail and word processing files since January 1, 1995 and the manner in which, and location in which, such archives were or are currently maintained.

*RESPONSE:*


**REQUEST FOR PRODUCTION NO. 17:**
Please produce all personnel handbooks and all documents reflecting the personnel practices and policies for the City of Harlingen in effect from January 1, 1995 until present.

*RESPONSE:*


**REQUEST FOR PRODUCTION NO. 18:**
Please produce all documents reflecting your procedures and criteria for assigning, training, assisting, handling the complaints of, evaluating, promoting, increasing salary, demoting, disciplining, laying off and discharging of your employees since January 1, 1995 to date.

*RESPONSE:*


**REQUEST FOR PRODUCTION NO. 19:**
Please produce all documents which reflect, refer, evidence, relate or describe in any manner any defense upon which you may rely in the defense of this suit.

*RESPONSE:*

**REQUEST FOR PRODUCTION NO. 20:**
Please produce all documents relating to or evidencing the job description, employment duties, and standards of performance for Jim Scheopner, Ralph D. Moore and Joseph Vasquez.

*RESPONSE:*

**REQUEST FOR PRODUCTION NO. 21:**
Please produce all documents reflecting communications made to Defendants' employees in connection with inquiries relating to or pertaining to Plaintiffs' complaints in this lawsuit.

*RESPONSE:*

**REQUEST FOR PRODUCTION NO. 22:**
Please produce all photographs, videotapes, charts, computer records or diagrams relating to any issue in this lawsuit.

*RESPONSE:*

**REQUEST FOR PRODUCTION NO. 23:**
Please produce all correspondence between Plaintiffs and you.

*RESPONSE:*

**REQUEST FOR PRODUCTION NO. 24:**
Please produce the original tape and/or other mechanical recording devices used by you to record any conversations with Plaintiffs during the past 5 years.

*RESPONSE:*

**REQUEST FOR PRODUCTION NO. 25:**
Please produce any reports about this lawsuit and/or claims subject to this litigation made by you to your City Council and/or insurance adjusters or carriers, including Texas Municipal League.

*RESPONSE:*


**REQUEST FOR PRODUCTION NO. 26:**
Please produce all billing statements or fee records of your attorneys in connection with the defense of this litigation.

*RESPONSE:*


**REQUEST FOR PRODUCTION NO. 27:**
All trial exhibits used in the *Arturo Guillermo Salinas, et al. vs. City of Harlingen* case, B-98-162 by either Plaintiff or Defendants.

*RESPONSE:*


**REQUEST FOR PRODUCTION NO. 28:**
All trial transcripts used in the *Arturo Guillermo Salinas, et al. vs. City of Harlingen* case, B-98-162.

*RESPONSE:*


**REQUEST FOR PRODUCTION NO. 29:**
All correspondence between any representatives of the City of Harlingen and any representatives of the Plaintiff in *Arturo Guillermo Salinas, et al. vs. City of Harlingen* since February 2002.

*RESPONSE:*

**REQUEST FOR PRODUCTION NO. 30:**
All files or other documents containing information on Ernest Moore and relating to the shooting incident on July 7, 1998.

***RESPONSE:***


**REQUEST FOR PRODUCTION NO. 31:**
All criminal records of Ernest Moore.

***RESPONSE:***


**REQUEST FOR PRODUCTION NO. 32:**
All records of disciplinary action taken against Ralph Dwayne Moore, Jim Schoepner, and Joe Vasquez during the past twenty (20) years.

***RESPONSE:***


**REQUEST FOR PRODUCTION NO. 33:**
All criminal and other files on Julie Cox, who was involved in the Ernest Moore investigation.

***RESPONSE:***


**REQUEST FOR PRODUCTION NO. 34:**
All files or documents on the MAK-90 rifle that you contend was used in the shooting of Plaintiffs.

***RESPONSE:***


**REQUEST FOR PRODUCTION NO. 35:**
All files or documents you have on Danny Carpenter and any investigation by him.

*RESPONSE:*


**REQUEST FOR PRODUCTION NO. 36:**
All investigations of the shooting of July 7, 1998.

*RESPONSE:*


**REQUEST FOR PRODUCTION NO. 37:**
All records of training received by Ralph D. Moore in the use of weapons during the past twenty (20) years.

*RESPONSE:*


**REQUEST FOR PRODUCTION NO. 38:**
All policies for training in the use of assault or automatic weapons by the Harlingen Police Department employed during the last 20 years.

*RESPONSE:*


**REQUEST FOR PRODUCTION NO. 39:**
All policies regarding an alleged "SWAT team" which exists at the City of Harlingen or that would suggest Ralph D. Moore was a sharpshooter on such a SWAT team.

*RESPONSE:*


**REQUEST FOR PRODUCTION NO. 40:**
All incident reports of all officers relating to the July 7, 1998 shootings.

*RESPONSE:*

**REQUEST FOR PRODUCTION NO. 41:**
All investigations commenced by former Police Chief Michael Blake regarding the MAK-90 assault rifle.

*RESPONSE:*

**REQUEST FOR PRODUCTION NO. 42:**
All ATF Form 4473's that relate to the MAK-90 assault rifle.

*RESPONSE:*

**REQUEST FOR PRODUCTION NO. 43:**
All policies of the City of Harlingen regarding registration of weapons under ATF Form 4473, both for police officers and private citizens.

*RESPONSE:*

**REQUEST FOR PRODUCTION NO. 44:**
All records from R.D. Moore or any other police officers regarding Ernest Moore and his drug and mental health problems.


*RESPONSE:*