case, concerning the propriety and admissibility of such matters. It is further requested that opposing counsel be instructed to apprise each of the witnesses called as to the contents of this Motion and the Court's subsequent Order so that such Order will not be inadvertently violated by a witness. In support of this Motion, Movants represent the following:

**I.**

The matters set out would be inadmissible in evidence for any purpose, on proper and timely objection, because they have no bearing on any issue in this case or the rights of the parties to this suit but, rather, would only tend to prejudice or confuse the jury.

**II.**

Permitting interrogation of witnesses, comments to jurors, or prospective jurors, or offers of evidence concerning any of the matters set forth herein would confuse and prejudice the jury, and sustaining objections to such questions, statements, or evidence introduced or attempted to be introduced by counsel or witnesses will not prevent such prejudice, but will reinforce the development of such questionable and improper evidence. In this connection, Movants must emphasize that, due to the nature and circumstances of this case, if such questions, statements or evidence are even attempted to be introduced or otherwise brought to the attention of the jurors, thereby forcing Movants to assert proper objections to such matters in the presence of the jurors, Movants will be irreparably prejudiced as these improper and/or inadmissible matters will be reinforced to the jurors and give them the erroneous impression that Movants are attempting to withhold matters from them.

This court may make a definitive ruling excluding this evidence before trial. FED. R. EVID. 103(a). Defendants request the court make a definitive ruling to exclude the follow items of evidence. Alternatively, they request the court order Plaintiffs to first approach the bench out of the

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUN 0 4 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| DAN MORIN | { | |
| | { | |
| V. | { | CIVIL ACTION NO. B-00-104 |
| | { | |
| CITY OF HARLINGEN, ET AL. | { | |

and

| | | |
|---|---|---|
| DONALD MORIN, ET AL. | { | |
| | { | |
| V. | { | CIVIL ACTION NO. B-00-104 |
| | { | |
| CITY OF HARLINGEN, ET AL. | { | |

## DEFENDANTS' AMENDED MOTION IN LIMINE

TO THE HONORABLE JUDGE OF SAID COURT:

**CITY OF HARLINGEN** and **R.D. MOORE** Defendants in this case, and hereinafter called "Movants", files this Motion in Limine, requesting the entry of an Order, prior to the voir dire examination of the jury panel, that opposing counsel and all witnesses to be called in this case be instructed to refrain from any mention, or any interrogation, directly or indirectly, in any manner whatsoever, including the offering of documentary evidence concerning the specific matters hereinafter set forth in this Motion. In this connection, Movants request the Court to instruct opposing counsel and all witnesses that, before making any such mention, interrogation, or offer of proof or evidence concerning such matters, opposing counsel must first request a ruling from the Court outside the presence and hearing of all prospective jurors, or jurors ultimately selected in this

jury's presence for a ruling before mentioning, asking questions about or proffering evidence about any of the following.

### III.

The following matters would not be admissible for any purpose in this case and Movants respectfully request an Order prohibiting the same:

1. Any mention of, reference to or insinuation that the Defendants have, or may be covered by any policy of liability insurance.

2. Attempting to call any expert witness who is not designated and report provided in accordance with Rule 26(a)(2) FRCP or any attempt to offer any opinions or the basis and reasons therefore which are not contained in Plaintiffs' expert reports.

3. Attempting to call any witness that was not timely disclosed by the discovery deadline of June 1, 2003.

4. Attempting to offer any document that was not timely designated by the discovery deadline of June 1, 2003, except the ATF Trace Report.

5. R.D. Moore's refusal to take or not taking a polygraph.

6. The R.D. Moore checked a license tag number or vehicle registration supplied by his son. Moore did not obtain any information about the Morins nor did he disclose any information to his son. The purported events are not relevant. FED. R. EVID. 401. Any slight probative value is outweighed by the tendency to confuse or mislead the jurors and is unduly prejudicial. FED. R. EVID. 403. The City cannot be liable for the purported misconduct because it does not involve the use or condition of tangible property. TEX, CIV. PRAC. & REM. CODE, section 101.021. It is not probative of any other fact.

7. Harlingen hired the consultant James Robenson and he did an investigation and

prepared a report. His investigation did not bear on the events in Rio Hondo or how Ernest Moore came to possess the MAK-90 rifle (called an "AK-47" by Plaintiffs) in question. The purported events are not relevant. FED. R. EVID. 401. Any slight probative value is outweighed by the tendency to confuse or mislead the jurors and is unduly prejudicial. FED. R. EVID. 403.

8. Any demands or requests in the presence of the jury for matters found or contained in Defendants' files or papers, which would include statements, pleadings, photographs, or other documents.

9. That Plaintiffs be prohibited from making any argument or statement concerning the probable testimony of a witness who is absent, unavailable, or not called to testify in this cause.

10. That Plaintiffs be prohibited from arguing or stating to the jury to follow the "Golden Rule," i.e., to ask the members of the jury to put themselves into Plaintiffs' place and to give Plaintiffs what they would want if they were injured similarly to plaintiffs.

11. That Plaintiffs refrain from making any mention, request or solicitation of an agreement or stipulation from Defendants, its counsel or any of its witnesses. Any such request for an agreement or stipulation can only have the effect of placing Defendants in an awkward and embarrassing situation, and Defendants or their counsel's refusal to enter into agreements or stipulations could only serve to prejudice Defendants. Any such matters proposed by Plaintiffs should only be made outside the presence of the jury.

12. That Plaintiffs refrain from making any comment or reference which suggests or infers to the jury that this motion has been filed, or that Defendants have moved to exclude and/or withhold any evidence.

13. Any of the events after Ernest Moore fled the Morin house, i,e. his flight to the Moore residence and the shootings there. These events occurred at a different time and place; Ernest Moore

used a different rifle and acted for different reasons. The purported events are not relevant. FED. R. EVID. 401. Any slight probative value is outweighed by their tendency to confuse or mislead the jurors and is unduly prejudicial. FED. R. EVID. 403.

14. Police Chief Scheopner's statements to the press to explain the presence of the Olympic Arms .223 rifle assigned to Defendant Moore and whether a SWAT team existed, as well as testimony whether these statements were true or false. The purported statements as well as their truth or falsity are not relevant. FED. R. EVID. 401. Any slight probative value is outweighed by their tendency to confuse or mislead the jurors and is unduly prejudicial. FED. R. EVID. 403.

15. The investigation by the City into (a) the shooting events at the Moore household or (b) Police Chief Scheopner's handling or investigation into that shooting, or (c) Police Chief Scheopner's handling or investigation into the presence of the Olympic Arms .223[1] rifle at the Moore residence. None of these investigations bore on the events in Rio Hondo or how Ernest Moore came to possess the MAK-90 rifle[2] in question. The purported events are not relevant. FED. R. EVID. 401. Any slight probative value is outweighed by their tendency to confuse or mislead the jurors and is unduly prejudicial. FED. R. EVID. 403.

16. Any evidence concerning (a) the City of Harlingen's policies, standards, practices, or decisions concerning firearms training, qualification, handling, assignment, storage, maintenance, or safeguard, or (b) any testimony or reports critical of same, unless and until Plaintiffs first offer credible evidence that the MAK-90 rifle in question was owned or controlled by the City of Harlingen. Until Plaintiffs make that showing, the purported events are not relevant. FED. R. EVID.

---

[1] An Olympic Arms .223 rifle is a semi-automatic civilian version of the US military's M3 rifle a/k/a M-16 rifle; the military version is fully automatic, whereas the Olympic Arms .223 rifle is semi-automatic.

[2] The MAK-90 rifle is a semi-automatic civilian version of the Chinese and Russian military's AK-47. The military version is fully automatic whereas the civilian version is semi-automatic.

401. Any slight probative value is outweighed by their tendency to confuse or mislead the jurors and is unduly prejudicial. FED. R. EVID. 403.

17. Any reference to the MAK-90 rifle used by Ernest Moore as an "AK-47" rifle. The MAK-90 rifle is a civilian version of the Chinese/Russian fully automatic rifle commonly callsed an "AK-47." The chief difference is that an AK-47 is fully automatic, firing bullets so long as the trigger is depressed; a MAK-90 is semi-automatic, firing only one bullet each time the trigger is depressed. Calling the MAK-90 an "AK-47" is misleading because (1) a fully automatic rifle would probably be illegal, and (2) it conveys the impression that the MAK-90 is more powerful than it is.

18. Any evidence that in 1992 or 1993, retired Harlingen Police Officer Jose Hernandez saw a citizen bring an "AK-47" to the police department for disposal and gave same to Capt. Joseph Vasquez, until it is first established that this is the same rifle that Ernest Moore used during the incident in question. Until Hernandez can first establish that the "AK-47" he claims he saw in 1992/93 was the same rifle used to shoot the Morins, the evidence is irrelevant; any slight probative value is outweighed by its capacity to confuse the jury or cause undue prejudice. FED. R. EVID. 401, 402, 203.

19. Any evidence that Chief Scheopner and/or Capt. Vasquez were negligent or otherwise guilty of wrongdoing. The Fifth Circuit affirmed dismissal of the claims against them on the merits of the state law claims. *Morin v. Moore*, 309 F.3d 316, 325-27 (5th Cir. 2002). This is *res judicata* on any such claims. Moreover, any such evidence would be unduly confusing and prejudicial to the remaining Defendants. FED. R. EVID. 403.

20. Any evidence concerning state or city regulations concerning training and qualification for use of rifles by police officers or assignment of weapons to them (or whether such regulations were violated) until Plaintiffs first establish that the MAK-90 rifle in question was

assigned to Defendant Moore by the Police Department. Until Plaintiffs offer such evidence, any evidence about those regulations (or whether they were violated) would be unduly confusing and prejudicial to the remaining Defendants. FED. R. EVID. 403.

### IV.

Based on Plaintiffs Pre-trial Disclosures, Defendants anticipate Plaintiffs will attempt to offer evidence concerning the circumstances of the shooting of the Border Patrol agents at the Moore residence, various investigations and reports into how the City's Olympic Arms .223 rifle came to be there, and the City's actions. Without admitting the truth of these allegations, Defendants anticipate that the Plaintiffs' proffered evidence will show the following.

Sometime before these incidents, a Harlingen resident, Mrs. Pirtle delivered an Olympic Arms .223 rifle to the Harlingen Police Department for disposal or destruction. The rifle was kept by the Police Department. The Police Chief Schoepner claims he authorized an "SWAT team" to have sharpshooter rifles and that he or Capt. Joseph Vasquez assigned the Olympic Arms .223 to Det. R.D. Moore, who was to be a member of the SWAT team.

Before these incidents, Capt. Vasquez purchased for his own use a MAK-90, which he sold privately to Ernest Moore through Defendant R.D. Moore. A few months before these incidents, Capt. Vasquez privately sold a Colt AR-15[3] rifle to Ernest Moore through Defendant R.D. Moore.

On the day of the shootings, all three rifles (the Olympic Arms .223 rifle, the Colt AR-15 rifle, and the MAK-90 rifle) were present in the Moore residence. Ernest Moore used the MAK-90 to shoot Dan Morin, Delia Morin, and Margarita Morin. He used the Olympic Arms .223 rifle to shoot the Border Patrol agents and Sheriff's Dep. Raul Rodriguez. The Colt AR-15 was not used in either shooting. Defendants contend that the Colt AR-15 and the MAK-90 rifles were Ernest

---

[3] A Colt AR-15 is a civilian semi-automatic version of the US military M3 rifle (a/k/a "M16"). It is set fully automatic like an M3.

Moore's private property.

After the shootings, there were investigations by the City into why the Olympic Arms .223 rifle was present in the Moore residence. Former Police Officers Joe Rubio and Dennis Zamarron claimed that there was no SWAT team ever created and Police Chief Schoepner's explanations were a "cover-up." The caused the Harlingen Police Officers Ass'n to publish their unsupported claims. They claimed that former police officer Shawn Foist was reprimanded when he made unauthorized statements about the investigation into the events at the Moore residence. Because the City believed that Morin shootings did not involve a city owned rifle, none of these investigations bore on the incidents at the Morin residence. No statements of Rubio, Zamarron, Foist, or the HPOA bore on the events at the Morin residence.[4]

Without conceding the truth of this evidence, Defendants urge that much of this is not relevant and any slight probative value is outweighed by the capacity to confuse the jurors or cause undue prejudice. Consequently, under ¶ III. 7, 13, 14, 15, and 16, the court should exclude:

    a.    The Robensen report, the circumstances under which it was commissioned, and any witnesses conclusions or opinions about it;

    b.    Police Chief Schoepner's investigation into the Border Patrol shootings, his statements to the press or City officials concerning that event, the SWAT team, or his reasons for assigning the Olympic Arms .223 to Det. Moore;

    c.    Any investigation by Asst City Manager LaBeau or City Manager Prim;

    d.    That Chief Scheopner was demoted or reprimanded;

    e.    Any testimony by Joe Rubio or other persons that a "cover up" followed the Border

---

[4] Moreover, these statements are hearsay. Fed. R. Evid. 801, 802.

    Patrol shootings or that Chief Scheopner's explanations were false or defective in any respect.

 f. Statements published by the Harlingen Police Officers Ass'n.

 g. Statements by Shawn Foist.

All of these matters bear only on the Olympic Arms .223 rifle and the shootings at the Moore residence; none of them bear on the MAK-90 rifle or the shootings at the Morin residence.

## V.

That each of the above matters set forth in individual paragraphs are generally inadmissible, irrelevant, and immaterial to Movants's rights to a fair and impartial trial. That should any matter set forth above become material, relevant, or admissible, Plaintiffs or their attorneys herein can bring such matter to the Court's attention, receive a favorable ruling thereon, and thus preserve each and every one of Plaintiffs' rights. That failure of the Court to grant this Motion in Limine will be to grant opposing counsel and their clients a free hand to inject such inadmissible and prejudicial matters as listed above before the Jury and even though upon objection, the Court sustains the same and instructs the Jury to disregard the same, harm is already accomplished.

Therefore, to prevent a miscarriage of justice, Movants prays that this Motion in Limine be granted in its entirety.

**WHEREFORE, PREMISES CONSIDERED**, Movants requests that the Court enter an Order that the counsel for the Plaintiffs and through them any and all witnesses on behalf of Plaintiffs be and are hereby instructed to refrain from any mention or interrogation, directly or indirectly, to any matter whatsoever regarding any matters set forth in the Motion, including the offering of any documentary evidence, without first requesting and obtaining a ruling for the Court outside the presence and hearing of all prospective jurors ultimately selected in this cause in regard

to any alleged theory of admissibility of such matters.

Respectfully submitted,

By: _____
Tom Lockhart
Admissions ID No. 2257
Texas State Bar No. 12473500
Roger W. Hughes
Admissions ID No. 5950
Texas State Bar No. 10229500
**ADAMS & GRAHAM, L.L.P.**
P. O. Drawer 1429
Harlingen, Texas 78551-1429
956/428-7495; FAX: 956/428-2954

Attorney-in-Charge for Defendant,
CITY OF HARLINGEN and R.D. MOORE

By: _____
WALTER J. PASSMORE
Admissions ID No. 2264
State Bar No. 15560400

**THE LAW OFFICE OF WALTER J. PASSMORE, PC**
2424 North 10th St., Suite 201; 78501
P. O. Drawer 3187
McAllen, TX 78502-3187
956/668-8750 107; FAX: 956/668-1714

Attorney for Defendant R.D. MOORE

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing document was forwarded on this 4th day of June, 2003, to the following counsel of record and interested parties:

Attorney of record for Plaintiff, DAN MORIN, et al:

Mr. David Sergi                                                          Via Facsimile: 512/392-504
**SERGI & ASSOCIATES**
109 E. Hopkins
Suite 200
San Marcos, TX 78666

Attorney of record for Plaintiff, DONALD MORIN, et al:

Mr. Jerry J. Trevino                                                    Via Facsimile: 361/882-8355
**ATTORNEY AT LAW**
1125 South Port Avenue
Corpus Christi, TX 78405

Attorney of record for Defendant, R.D. MOORE. individually:

Mr. Walter Passmore                                                 Via Facsimile: 956/668-1714
**LAW OFFICE OF WALTER J. PASSMORE, P.C.**
P. O. Drawer 3187
McAllen, TX 78502-3187

_____
ROGER W. HUGHES